**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Terrence M. LEWIS, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 12, 2011.
Filed Feb. 29, 2012.

John J. McMahon, Jr., Philadelphia, for appellant.

Jennifer Lin, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., FORD ELLIOTT, P.J.E., MUSMANNO, BENDER, GANTMAN, PANELLA, ALLEN, LAZARUS, and MUNDY, JJ.

OPINION BY MUSMANNO, J.:

Terrence M. Lewis ("Lewis") appeals from the judgment of sentence imposed after he was convicted of possession with intent to deliver a controlled substance ("PWID").[1] We affirm.

The trial court set forth the pertinent facts of the case as follows:

Pennsylvania State Trooper Scott Miscannon ("Miscannon") ... had been assigned to the Vice Narcotics Unit since 1995, primarily dealing with mid-to-upper level drug dealers. On July 1, 2008, Miscannon met with a confidential inform[ant] (CI), who told him about a mid-to-upper level drug trafficker in Philadelphia, [Lewis], who dealt in up to nine ounces of cocaine and that he had purchased drugs from this person in the past. The CI described this man as a black male, approximately 25 years old, and that he drove a silver Dodge Ram truck or a green Lincoln Town Car. Based upon this information, Miscannon instructed the CI to call [Lewis] and order 4.5 ounces of "hard" (crack cocaine) and 4.5 ounces of "soft" (powder cocaine), for a total of nine ounces. The

---

1. 35 P.S. § 780–113(a)(30).

CI did so using speakerphone and they settled on a price of $8000 for these drugs. Miscannon then called State Trooper Javier Garcia ["Garcia"] and instructed him to proceed undercover with the CI to purchase the drugs. The CI and [Lewis] engaged in several more phone calls while deciding where to meet. Miscannon testified that the CI always had the phone on "speaker" and he recognized the same voice on the other end each time. The CI and [Lewis] finally agreed to meet in a Pathmark Parking Lot at the intersection of Monument and Ford Road. Miscannon followed [the] CI and Garcia to that location in an unmarked police vehicle. At approximately 4:10 p.m., he saw [Lewis] arrive in a silver Dodge Ram pickup truck and pull up alongside the CI and Garcia's car. [Lewis] then drove to the intersection of Media and 60th Street, followed by the CI and Garcia in their own car. Miscannon remained in an unmarked police vehicle parked around the corner so that he could conduct surveillance. Approximately two minutes later, he observed [Lewis] walk onto the 1400 block of Redfield Street. He lost sight of [Lewis] for approximately 8–10 minutes when he entered and exited a residence, and then stopped to talk with an individual in a black Jeep. After receiving the pre-determined takedown signal from Garcia, Miscannon proceeded to where Garcia and the CI were located and arrested [Lewis] from inside the backseat of an undercover police vehicle. From [Lewis's] person, he recovered $6,310 and two cell phones. Miscannon called the phone number the CI had been using to communicate with [Lewis], and one of the cell phones rang. After [Lewis] was in custody, Garcia gave Miscannon a clear plastic bag filled with 4.5 ounces of powder cocaine, which Garcia had received from [Lewis].

Irina Aleshkevich ("Aleshkevich"), a forensic scientist at the Pennsylvania State Police Lab, testified ... that she conducted two tests on the contents of [the] clear plastic bag containing a white substance and that she determined it to be 124 grams of cocaine.

[Garcia] ... had been assigned to the Vice Narcotics Unit for [a] year and a half. On July 1, 2008, Miscannon asked Garcia to perform undercover work and accompany the CI to purchase the nine ounces of cocaine he had ordered. While he was in the car with the CI, the CI had his phone on speakerphone and communicated several times with [Lewis] as to where they would meet. Once they arrived at the Pathmark grocery store parking lot, the agreed[-]upon location, Garcia and the CI pulled up alongside a silver Dodge pickup truck and the CI and [Lewis] spoke again on the phone. [Lewis] instructed them to follow him; he led them to 60th and Media Streets. Garcia testified that they were unable to park behind [Lewis's] truck so they parked in front of it, immediately in front of a daycare center on the corner. [Lewis] then approached the vehicle and had a conversation with the CI. He then looked into the backseat through the window and asked Garcia for $8000. Garcia asked him to show him the cocaine first. [Lewis] left the area for approximately 10 minutes and when he returned, he entered the vehicle and sat in the backseat. He reached into the left leg pocket of his cargo pants and produced a yellow bag of cocaine. Garcia stepped out of the vehicle, gave backup officers the predetermined "take-down" signal, and [Lewis] was taken into custody. . . .

. . .

[Lewis] testified ... that on July 1, 2008, he borrowed a pickup truck and

drove from Coatesville, PA to Philadelphia with his 16–year–old friend, Harvey. The truck belonged to Harvey's stepfather and Harvey needed to be dropped off somewhere in Philadelphia. [Lewis] called a friend, Tyree Waters ("Waters"), and discussed purchasing a bicycle from him. He met with Waters and an unknown male in the parking lot of a Pathmark grocery store near City Line Avenue, but they did not have the bicycle with them. Waters called him on the phone and said they needed to go somewhere else to get the bicycle so [Lewis] followed his car to 60th and Media Streets. [Lewis] exited his vehicle and walked towards Redfield Street because he saw his cousin['s] car parked there. As he was walking towards Redfield Street, Waters called him and said that the man selling the bicycle, "Pedro," was in the backseat of the car and wanted to talk to him. [Lewis] spoke with Pedro in the backseat, and they agreed to a selling price of $4500. [Lewis] testified that Pedro told him the bicycle was around the corner and then he stepped out of the vehicle. A few moments later, two state troopers appeared and put [Lewis] in handcuffs.

Trial Court Opinion, 3/29/10, at 3–7 (citations omitted).

After a jury trial, Lewis was found guilty of PWID. On April 16, 2009, the trial court sentenced him to a prison term of ten to twenty years. Lewis filed a post-sentence Motion, requesting a new trial and reconsideration of sentence. Lewis's post-sentence Motion was denied by operation of law, and he then filed this timely appeal. Lewis also filed a Concise Statement of matters complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), in accordance with a trial court Order.

Lewis raises the following issues for our review:

1. Whether the evidence was sufficient to support [Lewis's] conviction for [PWID]?
2. Whether the sentence was excessive and an abuse of discretion?

Brief for Appellant at 5.

Lewis first contends that the evidence was insufficient to support his conviction of PWID. He asserts that his version of the events at issue was more credible than the Commonwealth's, that the Commonwealth did not present testimony to reveal the identity of the CI, and that although Garcia testified that numerous telephone calls were made between him and the CI, these calls were not listed on the discovery provided to defense counsel.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be con-

sidered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Troy,* 832 A.2d 1089, 1092 (Pa.Super.2003) (citations omitted).

The crime of PWID is defined as follows:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

. . .

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780–113(a)(30).

The trial court found that the evidence was sufficient to support Lewis's conviction of PWID, reasoning as follows:

The totality of the circumstances, taken in the light most favorable to the Commonwealth, was sufficient to sustain [Lewis's] conviction for [PWID]. The record demonstrates that [ ] Miscannon, via a[CI], learned of a mid-level drug dealer[, Lewis,] who drove a silver Dodge pickup truck or Lincoln town car and sold up to nine ounces of cocaine. Based upon this credible information, Miscannon instructed the CI to contact [Lewis] and arrange a purchase of nine ounces of cocaine. [ ] Garcia, working undercover, accompanied the CI to the prearranged location—a Pathmark grocery store parking lot. Once there, Garcia saw [Lewis] in a silver Dodge pickup truck. [Lewis] instructed them to follow

him and he led them to 60th and Media Streets, parking near a day care center on the corner. [Lewis] then spoke with the CI and Garcia, demanding $8000 for the drugs. Garcia told him he wanted to see the drugs first. [Lewis] left for approximately 10 minutes, during which time Miscannon had him under surveillance and observed him enter a residence on Redfield Street. When [Lewis] returned to the car, he entered the backseat and handed Garcia a plastic bag containing 4.5 ounces of cocaine. Garcia then signaled backup officers to arrest [Lewis]. Police recovered $6,310 cash and two cell phones from [Lewis's] person. Miscannon dialed the phone number the CI called when he was arranging the drug deal and one of [Lewis's] cell phones rang. The evidence overwhelmingly demonstrates that [Lewis] was selling drugs. The jury, as fact-finder, did not find [Lewis's] testimony about purchasing a motor/dirt bike to be credible.

Trial Court Opinion, 3/31/10, at 15–16. Based on our review of the record, we agree with the trial court's reasoning, and conclude that the evidence was sufficient to support Lewis's conviction of PWID. *See* N.T., 2/19/09, at 6–25, 55–56; N.T., 2/18/09, at 66–94.

■ Lewis's argument that his version of the events was more credible than the Commonwealth's version goes to the weight of the evidence, not its sufficiency. *See Commonwealth v. Wilson,* 825 A.2d 710, 713–14 (Pa.Super.2003) (stating that a claim challenging the credibility of evidence is a challenge to the weight of the evidence). Similarly, Lewis's other claims, that the Commonwealth did not present testimony to reveal the identity of the CI, and that although Trooper Garcia testified that numerous telephone calls were made between him and the CI, these calls were

not listed on the discovery provided to defense counsel, also challenge the weight, not the sufficiency, of the evidence.

■ In order to preserve a claim of weight of the evidence for appellate review, the issue must be raised with the trial judge in a motion for a new trial either orally prior to sentencing, by written motion prior to sentencing, or in a post-sentence motion. *See* Pa.R.Crim.P. 607; *Commonwealth v. Butler*, 729 A.2d 1134, 1140 (Pa.Super.1999) (holding that a challenge to the weight of the evidence is waived for failure to present the issue first to the trial court).

Lewis did not allege in his brief that he raised this issue before the trial court, and our review of the record discloses that Lewis did not raise this issue in his post-sentence Motion or in his Rule 1925(b) Concise Statement. Thus, he has failed to preserve his claim challenging his conviction as against the weight of the evidence. *See* Pa.R.Crim.P. 607; Pa.R.A.P. 1925(b)(4)(vii) (providing that issues not included in the appellant's Rule 1925(b) concise statement are waived).

Lewis next contends that his sentence was excessive and an abuse of discretion. He asserts that the trial court imposed a sentence above the aggravated range of the sentencing guidelines, but did not provide justification on the record for such "an extreme upward departure." Brief for Appellant at 15. Lewis claims that there were no exceptional circumstances that would justify "such an extreme sentence of three additional years." *Id.* He also asserts that the trial court failed to consider that Lewis was raised by drug-addicted parents, that he actively sought education and treatment while incarcerated in the local jail, and that he presented numerous letters and witnesses to testify about his character. *Id.*

Lewis's claim challenges the discretionary aspects of his sentence.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue:

[W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa. R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. Pa. R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal 'furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to exceptional cases.' "

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process."

*Commonwealth v. Phillips,* 946 A.2d 103, 112 (Pa.Super.2008) (some citations omitted).

In this case, Lewis filed a timely notice of appeal, and properly preserved this issue in his post-sentence Motion. In addition, Lewis's brief contains the required Rule 2119(f) statement. Therefore, we must determine whether Lewis has stated a substantial question justifying this Court's review of his sentencing claim. *See Phillips,* 946 A.2d at 112.

 In his Rule 2119(f) statement, Lewis alleged that the sentencing court focused exclusively on the seriousness of the crime charged, that the sentencing scheme was contrary to the norms underlying the sentencing process, and that his sentence was manifestly excessive and unduly harsh.

Under the Sentencing Code, the sentencing court

> shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721. Lewis's allegation that the sentencing court focused exclusively on the seriousness of the crime raises at least a plausible argument that the sentencing court did not follow the requirements of section 9721. *See also Commonwealth v. Rooney,* 296 Pa.Super. 288, 442 A.2d 773, 777 (1982) (stating that a court may not base its sentencing on the seriousness of the crime alone). Therefore, we conclude that Lewis has raised a substantial question, and we will consider the merits of his sentencing claim.

Our standard of review of a sentencing claim is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars,* 895 A.2d 1270, 1275 (Pa.Super.2006). In reviewing a sentence on appeal, the appellate court

> shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>
> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
>
> (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.
>
> In all other cases[,] the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S.A. § 9781.

Lewis contends that the trial court erred in imposing a sentence greater than the aggravated range of the sentencing guidelines, and sentencing him to an additional three years above the mandatory minimum sentence of seven years. He also contends that the trial court failed to consider that he had been raised by drug-addicted parents and had actively sought education and treatment while incarcerated.

■ A sentencing court "has no power to sentence below the mandatory minimum notwithstanding any guidelines provision." *Commonwealth v. Morgan*, 425 Pa.Super. 344, 625 A.2d 80, 84–85 (1993). However, the sentencing court must consider the sentencing guidelines "whenever the guidelines suggest a longer sentence than the mandatory minimum required." *Id.* (emphasis omitted). *See also* 204 Pa. Code § 303.9 (stating that "[w]hen the [guidelines] sentence recommendation is higher than that required by a mandatory sentencing statute, the court shall consider the guideline[s] sentence recommendation").

In the present case, the guidelines sentence recommendation was 72 to 90 months for the standard range, plus or minus twelve months for the aggravated and mitigated ranges. Thus, the aggravated range recommended sentence for Lewis was up to 102 months. In contrast, the mandatory minimum sentence of seven years was equivalent to a sentence of 84 months. Accordingly, the sentencing court should have considered the sentencing guidelines recommendation, as it was greater than the mandatory minimum sentence. *See Morgan, supra.*

The record shows that the sentencing court was aware of the guidelines recommendation. *See N.T.,* 4/16/09, at 4–5, 6. The Commonwealth, however, recommended that the court sentence Lewis to the statutory maximum of ten to twenty years. *Id.* at 7; *see also* 35 P.S. § 780–115 (providing that a person convicted of a second or subsequent offense of PWID "may be imprisoned for a term up to twice the term otherwise authorized"); 35 P.S. § 780–113(f)(1.1) (stating that a sentence for PWID cocaine is up to ten years in prison). The sentencing court accepted that recommendation. N.T., 4/16/09, at 25.

■ In its Opinion, the sentencing court discussed the factors it relied upon in sentencing Lewis, as follows:

In the case at bar, this court considered all relevant factors and properly sentenced [Lewis] to 10 to 20 years state incarceration after a jury found him guilty of possession with intent to deliver more than four ounces of cocaine.... First, this [c]ourt considered the nature of the offense and [Lewis's] history. In his presentence report, [Lewis] admitted to selling drugs as a way to make fast money since he was 17 years old. In fact, he stated that he was "addicted to selling drugs." Furthermore, this was his **sixth** PWID conviction and it involved selling 4.5 ounces [120 grams] of cocaine to an undercover police officer. Second, this [c]ourt had ample opportunity to observe [Lewis] during trial. This [c]ourt also considered a presentence investigation report, the sentencing guidelines report, counsel's arguments, and statements from [Lewis] and his family members, as well as letters from friend and family not present at the hearing. All of this information factored into this [c]ourt's conclusion that a total term of incarceration of 10 to 20 years was proper. Third, this [c]ourt found that [Lewis] was a self-admitted life-long drug dealer who had the choice to become a productive member of society but chose to remain a drug dealer because he was addicted to the lifestyle. Last, after having considered the applicable sentencing guidelines and mandatory minimum sentence of 7 to 14 years, this [c]ourt determined that the maximum possible sentence of 10 to 20 years state incarceration was appropriate ... for a recidivist mid-level drug dealer like [Lewis].

Trial Court Opinion, 3/29/10, at 18–19 (emphasis is original).

Based on our review, we conclude that the trial court's reasoning is supported by the record and its decision conforms to the applicable law. The sentence imposed by the trial court was 18 months greater than the sentencing guidelines recommendation, but, in the circumstances of this case, as explained by the trial court, that sentence was reasonable. *See* 42 Pa.C.S.A. 9781(c)(3). Thus, we conclude that the trial court did not abuse its discretion in imposing sentence.

Judgment of sentence affirmed.