**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES EDWARD SAMUELS | |
| Appellant | No. 2295 EDA 2015 |

Appeal from the Judgment of Sentence April 9, 2010
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005668-2008
CP-51-CR-0005669-2008
CP-51-CR-0005670-2008

BEFORE: FORD ELLIOTT, P.J.E., OLSON, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.: **FILED MAY 06, 2016**

The sole issue in this timely appeal is whether the trial court abused its discretion in imposing a sentence of 42½ - 85 years' imprisonment for Appellant's multiple sexual assaults of his three young sisters-in-law (A.F., D.M., and T.F.) over a seven year period. We affirm.

Appellant was charged with sexual offenses in three cases (one for each victim) which were consolidated for trial. On October 9, 2009, a jury convicted Appellant of two counts of rape, two counts of sexual assault, one count of involuntary deviate sexual intercourse ("IDSI"), one count of attempted rape, one count of unlawful restraint, three counts of endangering

the welfare of a child and three counts of corruption of minors.[1] The evidence giving rise to these convictions was as follows:

At trial, the Commonwealth presented the testimony of [A.F.]. [A.F.] testified that when she was six or seven years old,[2] she was living with her older sister, [C.M.], and [C.M.]'s husband – Appellant – at 729 Folsom Street in Philadelphia. [A.F.] testified that, one day when she was getting out of the bath, Appellant knocked on the door and walked into the bathroom. Appellant picked her up, put her on the bathroom sink, and penetrated her vagina with his penis. Before leaving the bathroom, Appellant told [A.F.] not to say anything. [A.F.] testified that she was too scared to tell anyone what happened.

Unfortunately, this was not the only time Appellant sexually abused her. [A.F.] testified that when she was eight or nine years old, she went with her mother and sister, [D.M.], to visit [C.M.] at her home in West Philadelphia. There, [A.F.], [D.M.], and [C.M.]'s children were reprimanded by Appellant for walking outside in the neighborhood. Appellant took the children one by one into the bedroom and beat them. When he got to [A.F.], however, Appellant told her that he was not going to beat her. He then pulled down [A.F.]'s pants and penetrated her anally with his penis. [A.F.] testified that she did not yell or fight back during the assault or tell anyone what happened because she was scared. [A.F.] testified that Appellant penetrated her anally again approximately one year later, when she was ten years old. She testified that she was visiting her sister's house in the summertime when she went upstairs to get some lotion from [C.M.]'s bedroom. When she got to the bedroom, she encountered Appellant, who pulled her into the room, and told her to be quiet. Appellant then put [A.F.] on the bed, leaned her over, pulled down her pants and penetrated her anally with his penis. [A.F.] testified that she screamed and Appellant stopped.

_____

[1] 18 Pa.C.S. §§ 3121(a)(1), 3124.1, 3123(a)(1), 901(a), 2902(a)(1), 4304(a)(1) and 6301(a)(1), respectively.

[2] A.F. was nineteen years old at the time of trial.

She then left the room. [A.F.] testified that during each of these encounters, Appellant touched her breasts with his hands.

[A.F.] testified that she kept these incidents bottled up inside until she was 14 or 15 years old, when she told her best friend, [S.F.]. [S.F.] advised [A.F.] to speak with a therapist about these incidents, which [A.F.] eventually did. [A.F.] testified that, after speaking with her therapist, her mother found out what Appellant did to her, and a family meeting was held at [C.M.]'s house. There, Appellant was confronted about these, and other incidents of sexual abuse (involving [A.F.]'s sisters and cousins), and [A.F.]'s aunt, [R.M.], summoned the police to the home.

[A.F.]'s sister, [D.M.], also testified at trial. [D.M.] testified that, during a family visit to [C.M.]'s house on Folsom Street when she was six or seven years old,[3] Appellant told her he had something to tell her. Appellant took her into the bedroom, put her on the bed, and put his penis in her vagina. [D.M.] testified that, right after this happened, she went to use the bathroom but 'couldn't go'. [D.M.] also testified that, when she was 10, 11 & 12 years of age, Appellant would come into her bedroom whenever she slept over at [C.M.]'s house, and 'feel on [her] and stuff' while she was asleep; his fondling would jar her awake, whereupon Appellant would leave the room. [D.M.] testified that Appellant did this to her 'a lot of times'. [D.M.] testified that she did not tell anyone about these incidents until telling her therapist a year or two prior to trial. Thereafter, [D.M.] revealed these incidents to her family at the meeting held at [C.M.]'s house on March 1, 2008.

[T.F.], [D.M.] and [A.F.]'s older sister, also testified at trial. [T.F.] testified that when she was 14 or 15,[4] she was getting dressed for work when Appellant came into her room and assaulted her; he grabbed her by the neck, pinned her against the wall with one hand, and with his other hand, Appellant unbuttoned her jeans and tried to pull them off. [T.F.] fought back and screamed, which alerted her cousins – Appellant's children – who came to her rescue. Appellant then ran out of the

_____

[3] D.M. was sixteen years old at the time of trial.

[4] T.F. was twenty-six years old at the time of trial.

- 3 -

room. [T.F.] contacted her father, who escorted her out of the premises. She moved her belongings out of the residence within the ensuing two weeks. [T.F.] revealed the above incidents to her family members upon learning about Appellant's assaults of [A.F.]. Like her younger sisters, [T.F.] reported the incident to police at the family meeting on March 1, 2008; immediately thereafter, she and the other victims were transported to the Special Victim's Unit, where they gave formal statements to detectives.

Pa.R.A.P. 1925(a) Opinion, 12/2/11, at 2-5 (internal citations omitted; footnotes in original).

At sentencing on April 9, 2010, the trial court reviewed a pre-sentence investigation report ("PSI"), an assessment of the Sexual Offenders Assessment Board, and the Sentencing Guidelines. Appellant had a prior record score of 5, making his standard range sentences as follows:

1. Rape of a person less than 13 years old (2 counts) – Guidelines: 84–102 months; Maximum: 20 Years

2. Attempted Rape (1 count) – Guidelines: 72–90 months; Maximum: 20 Years

3. IDSI (1 count) – Guidelines: 84–102 Months; Maximum: 20 Years

4. Sexual Assault (2 Counts) – Guidelines: 72–90 months; Maximum: 10 Years

5. Endangering the Welfare of a Child (3 Counts) – Guidelines: 21– 27 months; Maximum: 7 Years

6. Corrupting the Morals of a Minor (3 Counts) – Guidelines: 12– 18 months; Maximum: 5 Years

7. Unlawful Restraint (1 Count) – Guidelines: 6–16 months; Maximum: 5 Years

N.T., 4/9/10, 4–8.  If aggregated, the Guidelines recommended a total minimum sentence of approximately 48-60 years.  The statutory maximum, again assuming consecutive aggregate sentences, totaled 141 years.

The trial court then heard argument from defense counsel, provided Appellant an opportunity to speak, and reviewed his lengthy criminal record within the PSI.  As an adult, Appellant had 17 arrests, 11 convictions, 8 commitments, 9 violations of probation and 5 revocations.  The report noted Appellant became more sophisticated over time, moving from disorderly conduct and stealing cars to robbery and possession of drugs with intent to deliver.  N.T., 4/9/10, at 9–15.

Prior to imposing sentence, the trial court observed that Appellant "preyed upon six, seven year old girls" and engaged in "opportunistic behavior" and "a continuing course of sexual terrorism" against his own family.  N.T., 4/9/10, at 15.  It noted that Appellant may theoretically be rehabilitated in the distant future, but that such prospects were dubious without major, long-term adjustments.  *Id*. at 17.

Given all those considerations, the trial court sentenced Appellant to the following consecutive terms of imprisonment:

1.  Rape of A.F.: 10–20 years

2.  Rape of D.M.: 10–20 years

3.  Attempted Rape of T.F.: 5–10 years

4.  IDSI (A.F.): 7–14 years

5. Endangering the Welfare of a Child (A.F.): 3 ½–7 years

6. Endangering the Welfare of a Child (T.F.): 3 ½–7 years

7. Endangering the Welfare of a Child (D.M.): 3 ½–7 years

N.T., 4/9/10, at 15–16.[5]  On Appellant's remaining six convictions (including two sexual assaults, three corruptions of minors, and one unlawful restrain convictions), the court imposed no penalty.  Appellant's aggregate sentence was 42½ - 85 years' imprisonment.

Appellant filed a timely direct appeal, and on July 10, 2012, this Court affirmed in an unpublished memorandum at 1026 EDA 2010.  On November 28, 2012, our Supreme Court denied Appellant's petition for allowance of appeal.

On April 2, 2013, Appellant filed a timely petition for relief under the Post Conviction Relief Act.[6]  On July 20, 2015, the trial court granted Appellant leave to file a post-sentence motion *nunc pro tunc*, which Appellant did the same day.  On July 27, 2015, the court denied Appellant's

---

[5] The court did not state that it was imposing any sentence in accordance with any statute requiring a mandatory minimum term.  Nor do the sentencing orders in any case state that any sentence was a mandatory minimum.  Therefore, none of Appellant's sentences implicate the holding in **Alleyne v. United States**, -- U.S. --, 133 S.Ct. 2151 (2013), which prohibits the court from imposing a mandatory minimum sentence based on a fact which is not submitted to the jury or proven beyond a reasonable doubt.

[6] 42 Pa.C.S. § 9541 *et seq*.

motion.  On July 30, 2015, Appellant filed a timely notice of appeal.  Both

Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raised a single issue in his Pa.R.A.P. 1925(b) statement:

The trial court imposed an aggregate sentence of 42½ to 85 years.  The trial court's sentences for rape (two counts) and endangering the welfare of a child (three counts) were outside of the aggravated range of the Sentencing Guidelines.  A review of the record in this case shows that the trial court's aggregate sentence of 42½ to 85 years is unreasonable and manifestly excessive, not reflecting a proper consideration of the history, character and condition of [Appellant].  There is no evidence in this record with regard to [Appellant]'s background that would warrant an aggregate sentence of 42½ to 85 years. The trial court's comments made at the time that sentence was imposed indicate that the sentence imposed was impermissibly based solely on the nature and circumstances of the crime.  In sentencing [Appellant], the trial court made reference to [Appellant]'s 'blackness of heart' and 'blackness in his heart', which are not proper sentencing factors. The trial court's intent to incarcerate [Appellant] '... for the rest of your life' is not permissible as it is vindictive and the trial court's sentence amounts to a life sentence. [Appellant] was born on December 10, 1970, was 39 years old at the time of sentencing and will not be eligible for parole until he is more than 81 years old. Moreover, when the trial court's sentence exceeded the aggravated range of the Sentencing Guidelines for rape (two counts) and endangering the welfare of a child (three counts), the trial court failed to state its basis for doing so in violation of 42 Pa.C.S. § 9721 and 204 Pa. Code §303.1(d).  Additionally, the trial court failed to state any sufficient reasons for imposing sentence as required by Pa.R.Crim.P. 704(C)(2).  The sentence imposed by the trial court is not consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of [Appellant] as required by 42 Pa.C.S. § 9721(b). Clearly, the sentence imposed by the trial court is unreasonable as it is excessive and not reflective of [Appellant]'s character, history and condition and amounts to a life sentence. The allegations contained in [Appellant]'s post-sentence motion are adopted herein and made a part hereof.

[Citations to notes of testimony omitted].

This appeal is a challenge to the discretionary aspects of Appellant's sentence. The imposition of sentence

> is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment — a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the Appellant's character, and the Appellant's display of remorse, defiance, or indifference.

***Commonwealth v. Colon***, 102 A.3d 1033, 1041 (Pa.Super.2014).

"Challenges to the discretionary aspects of sentencing do not entitle a petitioner to review as of right." ***Commonwealth v. Allen***, 24 A.3d 1058, 1064 (Pa.Super.2011). Before this Court can address such a discretionary challenge, an appellant must comply with the following requirements:

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Allen***, 24 A.3d at 1064.

Here, Appellant satisfied the first three prongs of this test by filing a timely appeal, preserving his claim of excessiveness in a post-sentence

motion and providing a concise statement in his brief for allowance of appeal with respect to the discretionary aspects of sentence. In addition, Appellant raised a substantial question that his sentence was inappropriate under the Sentencing Code. Specifically, he asserted that the court based its decision to impose consecutive sentences, some of which exceeded the aggravated range of the Sentencing Guidelines, by focusing exclusively on the seriousness of his crimes. *See Commonwealth v. Lewis*, 45 A.3d 405, 411 (Pa.Super.2012) (Appellant raised substantial question by alleging that sentencing court focused exclusively on seriousness of his crime). Therefore, we will address Appellant's challenge to the discretionary aspects of his sentence.

We hold that the trial court properly exercised its discretion in sentencing Appellant to his lengthy term of imprisonment.[7]

The sentencing guidelines "are merely advisory," *Commonwealth v. Tirado*, 870 A.2d 362, 366 (Pa. Super. 2005), and merely inform the sentencing decision without cabining the court's exercise of discretion. *Commonwealth v. Walls*, 926 A.2d 957, 962 (Pa.2007). A trial court may sentence a defendant outside the guidelines "so long as it places its reasons for the deviation on the record." *Commonwealth v. Hess*, 745 A.2d 29, 31 n.4 (Pa.Super.2000); *accord* 42 Pa.C.S. § 9721(b). The purpose of this

---

[7] We note that the Commonwealth's brief does a commendable job in explaining the appropriateness of Appellant's sentence.

requirement is to ensure that the defendant knows why the sentence was imposed and to afford some basis for appellate review. *Commonwealth v. Royer*, 476 A.2d 453, 457 (Pa.Super.1984).

The court first reviewed the events underlying Appellant's crimes. It explained that Appellant was a "parental figure in [his victims'] lives" and used this power to take "advantage on multiple, multiple occasions of their vulnerability." N.T., 04/09/2010, at 5. Appellant brought his victims under his roof and then sexually brutalized them for years, a "continuing course of sexual terrorism." *Id*. at 15. The trial court also took into account the age of the victims and the impact of these crimes: Appellant "preyed upon six, seven year old girls" and repeatedly exhibited "opportunistic behavior." *Id*. The court also expressed dismay that Appellant exhibited no regard "to the likelihood of devastation to [his victims'] lives." *Id*. at 5. Indeed, each victim "ha[d] to get on the stand, face you, face a jury full of strangers, and talk about what is for most people unspeakable." *Id*. at 14.

The court also reviewed a PSI which detailed Appellant's history, background, and any potentially mitigating circumstances. The PSI catalogued 11 convictions, 8 commitments and 5 revocations of probation, and it highlighted Appellant's escalating criminal behavior from disorderly conduct and simple assault to robbery and possession of controlled substances with intent to deliver. N.T., 4/9/10, at 14–15. The court also observed Appellant in person during his four-day trial, during which he

- 10 -

displayed no emotion or remorse and instead exhibited "extraordinary" arrogance and indifference in the face of horrific accounts of his rapes and other sexual assaults. *Id*. at 14. Despite his criminal history and lack of contrition, the trial court still took his rehabilitative prospects into account, stating: "While you're in jail you will have an opportunity to show what kind of man you are. There are programs. There are therapies. There are educational opportunities … [Y]our choice will speak volumes about the type of man that you are to become over the next 30 to 40 years. *Id*. at 17.

Next, the trial court demonstrated a measure of leniency in imposing a guidelines range sentence for IDSI and a shorter-than-maximum sentence for attempted rape. The court also imposed no further penalty on six counts, including (1) two counts of sexual assault, each carrying potential guidelines sentences of 6 – 7½ years imprisonment; (2) three counts of corrupting the morals of a minor, each carrying guidelines ranges of 1 – 1½ years' imprisonment; and (3) one count of unlawful restraint with a guidelines range of 6 - 16 months' imprisonment. Had the court so chosen, it could have imposed an additional, aggregate, guideline range, minimum sentence of 15½ years' to 20 years and 4 months' imprisonment and an aggregate statutory maximum of 35 years' imprisonment.

Simply put, the trial court tailored Appellant's sentence to fit the circumstances of this case, his history and background and the need to protect the public and Appellant's multiple victims.

This case is strikingly similar to **Walls**, in which our Supreme Court held that the sentencing court properly considered the victim's young age (7 years old) and the relationship with Walls - her grandfather and babysitter - in imposing a 21–50 year aggregate term on one count each of rape, IDSI, and incest. **Id**., 926 A.2d at 966–68. This aggregate included statutory maximum, consecutive sentences of 10–20 years on convictions of rape and IDSI. **Id**. at 959. The Supreme Court explained that the victims' age and Walls' role as grandfather were legally permissible reasons for sentencing him to the statutory maximum. **Id**. at 967. Similarly, in the present case, the trial court properly considered the victims' ages and Appellant's position of power as their brother-in-law, parental figure, and provider. Appellant raped 6-year-old A.F. just after she moved in with him. He also serially molested T.F. and attempted to rape her when she was living under his roof. He also raped D.M. while she resided with him. Later, he continually preyed on A.F., sodomizing her on two different occasions when she was 8 and 10 years old, respectively. As in **Walls**, the trial court properly considered these facts, which were not elements of the offense or subsumed within the guidelines, when sentencing Appellant.

Appellant claims in his brief that the trial court did not properly consider his "history, character, and condition." Appellant's Brief, at 33. This claim fails, because the trial court reviewed both a PSI and a sexually violent predator evaluation which detailed his history, character, and background.

*See Walls*, 926 A.2d at 967 n.7 ("[W]here pre-sentence report[] exist[s], [an appellate court] shall continue to presume that the sentencing judge was aware of the relevant information regarding the Appellant's character and weighed those considerations along with mitigating statutory factors"). Appellant next maintains that the court improperly observed Appellant's "blackness of heart," which was "not a proper sentencing factor." Appellant's Brief, at 34. This comment, however, was merely a characterization of Appellant's wanton behavior in raping "six, seven year old girls" while acting as "a parental figure in their lives." N.T., 4/9/10, at 5, 15. As *Walls* emphasized, such reasons are wholly proper sentencing considerations in the context of sexual crimes perpetuated against very young children. *Id.*, 926 A.2d at 967.

Accordingly, Appellant's challenge to the discretionary aspects of his sentence is devoid of merit.

Judgment of sentence affirmed.

President Judge Emeritus Ford Elliott joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/6/2016

- 13 -