J-A29041-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHARLES DANIEL MARTIN, III, | : | |
| | : | |
| Appellant | : | No. 230 EDA 2017 |

Appeal from the Judgment of Sentence December 8, 2016
in the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0001106-2015

BEFORE:    LAZARUS, PLATT,* and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED DECEMBER 11, 2017**

Charles Daniel Martin, III (Appellant) appeals from the judgment of sentence imposed following his convictions for third-degree murder, robbery (inflict serious bodily injury), robbery (threatening serious bodily injury), conspiracy to commit robbery (inflict serious bodily injury), conspiracy to commit robbery (threatening serious bodily injury), and possession of an instrument of crime.  We affirm.

The aforementioned charges stem from Appellant's involvement in the murder of Nichelson Raymond.  At trial, the Commonwealth alleged that Appellant and his co-defendants, Lael Alleyne and Gary Bridges, Jr., engaged in a conspiracy to rob Raymond and Richard Piscoya during a drug deal set up by Monserrat Rosas, a minor, at Alleyne's behest.  The Commonwealth called Rosas as a witness, who testified that on December 20, 2014, two

*Retired Senior Judge assigned to the Superior Court.

days before Raymond's death, Alleyne asked Rosas for her assistance in robbing Richard Piscoya. Piscoya was friends with Rosas on Facebook and had pictures of marijuana posted on his Facebook page. Per Alleyne's instructions, Rosas messaged Piscoya and asked him to sell her two ounces of marijuana. Piscoya gave Raymond's telephone number to Rosas, who then provided it to Alleyne. N.T., 9/7/2016, at 53-69.

According to cell phone records introduced by the Commonwealth at trial, there were multiple calls between Appellant and Alleyne the following day. After each call, Appellant immediately called co-conspirator Bridges. N.T., 9/9/2016, at 27-34. Around the same time, Appellant and Alleyne also attempted to call Raymond multiple times at the number provided by Piscoya, but the number connected to a telephone equipped to receive text messages only. N.T., 9/8/2016, at 274-76.

Rosas testified that at this point, Alleyne reached out to her again, but she informed Alleyne that she no longer wanted to be involved unless Alleyne intended to pay for the marijuana she requested from Piscoya. Alleyne assured Rosas he would give her money to pay for the marijuana. Rosas then arranged to meet Piscoya on December 22, 2014, so that he could sell her the marijuana. N.T., 9/7/2016, at 70-73.

On December 22, 2014, Alleyne picked Appellant up in a Jaguar. Bridges was driving, Appellant was sitting in the front seat, and Alleyne was in the back. Rosas had never met Bridges and Appellant previously and did

not learn their names that day. Rosas observed Appellant's face and noticed that he was wearing a navy blue pea coat with wooden buttons and white ropes. After arriving at the meeting point, Bridges handed Alleyne a black gun. Alleyne removed the safety and put it in his coat pocket. Rosas then noticed that Appellant had a similar-looking gun in his lap. N.T., 9/7/2016, at 73-95.

Rosas exited the Jaguar and entered an SUV in which Raymond was sitting in the driver's seat and Piscoya was sitting in the front passenger seat. Rosas told them her friend was bringing the money. A few seconds later, Appellant and Alleyne walked up to the SUV at a quick pace with their hoods up. Alleyne yanked open the front passenger door and Appellant and Alleyne drew their guns. Alleyne demanded the marijuana while Appellant pointed his gun at Piscoya's side. In response, Raymond put the SUV in reverse and started backing up. Rosas jumped out of the SUV and ran. As she was running, she looked back and saw Appellant and Alleyne still standing by the SUV. She then heard six or seven gunshots in quick succession. N.T., 9/7/2016, at 95-109.

Raymond died at the hospital as a result of his gunshot wounds. Shortly after the murder, the police located Piscoya and Rosas and obtained statements. The statement Piscoya provided was consistent with the account of Rosas. N.T., 9/9/2016, at 144-46. Piscoya was unable to identify Appellant and Alleyne, but provided a general description that

matched their appearances, identifying Alleyne as the shooter and Appellant as the accomplice. N.T., 9/8/2016, at 14-35, 70-74, 80; N.T., 9/9/2016, at 126. Rosas provided Alleyne's name to the police, but did not know Appellant's name at the time. N.T., 9/9/2016, at 134. After the police determined through telephone and social media records that Alleyne and Appellant had extensive contact around the time of the murders, the police showed Rosas a photographic array. *Id.* at 134-40. Rosas identified Appellant as the man in the passenger seat. *Id.* When the police eventually arrested Appellant at his friend's residence, the police found a coat hanging in the closet, which matched the description of the pea coat Rosas said Appellant was wearing on the night of the murder. N.T., 9/8/2016, at 228-32.

Appellant and Alleyne were tried together in a jury trial.[1] Following the trial, Appellant was convicted of the aforementioned crimes, and on December 8, 2016, the trial court sentenced Appellant to an aggregate term of 28 to 56 years of incarceration. Appellant did not file a post-sentence motion. This timely-filed appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

---

[1] Prior to trial, Bridges entered into a plea agreement. At the conclusion of trial, Alleyne was convicted of first-degree murder, two counts of robbery, two counts of conspiracy to commit robbery, possession of instrument of a crime, and possession of a firearm by a minor.

- 4 -

Appellant raises two issues on appeal: "[(1).] Was insufficient evidence introduced at trial to support the verdicts of guilty to most of the offenses contained in the criminal information? [and (2).] Were the verdicts of guilty to most of the offenses contained in the criminal information against the weight of the evidence?" Appellant's Brief at 3 (suggested answers and unnecessary capitalization omitted).

Appellant summarizes his argument as follows.

[T]he evidence and testimony elicited at trial was insufficient as a matter of law to sustain the verdicts of guilty to the majority of the offenses contained in the information. Specifically, one juvenile [eyewitness], Monserrat Rosas, was called by the Commonwealth who directly observed the events as they transpired. The testimony from that witness could not logically be reconciled in order for the jury to reach a verdict of guilty beyond a reasonable doubt.

Appellant's Brief at 23. With respect to his sufficiency claim, Appellant points to the lack of DNA evidence placing him at the scene. He argues that the Commonwealth should have dusted for prints on the shell casings found at the murder scene. He also suggests the Commonwealth should have tested for DNA the pea coat found when Appellant was arrested months after the murder. *Id.* at 24-25. Appellant also takes issue with the testimony of the Commonwealth's expert, who opined that Appellant was in proximity to his co-conspirators at certain times, including during the murder, based upon the towers where Appellant's cell phone pinged. *Id.* at 26. Finally, in his weight-of-the-evidence challenge, Appellant assails the veracity of Rosas,

arguing that she had "interest, bias and motive to fabricate the appearance and participation" of Appellant in the robbery. *Id.* at 27-30.

Before we address the merits of Appellant's issues, we must determine whether he preserved them for appeal. We begin with Appellant's second issue regarding the weight of the evidence. Appellant concedes that he did not file a post-sentence motion and that the first time he challenged the verdict as being against the weight of the evidence was in his Rule 1925(b) concise statement. Therefore, he waived this issue. **See Commonwealth v. Lewis**, 45 A.3d 405, 410 (Pa. Super. 2012) (*en banc*) ("In order to preserve a claim of weight of the evidence for appellate review, the issue must be raised with the trial judge in a motion for a new trial either orally prior to sentencing, by written motion prior to sentencing, or in a post-sentence motion.") (citing Pa.R.Crim.P. 607).

Appellant has also waived his first issue regarding a challenge to the sufficiency of the evidence. In both his brief and his Rule 1925(b) statement, Appellant fails to specify precisely which elements of which crimes he contends the Commonwealth failed to prove. This Court has repeatedly required an appellant to specify in the Rule 1925(b) statement the particular element or elements upon which the evidence was insufficient. **See, e.g., Commonwealth v. Roche**, 153 A.3d 1063, 1072 (Pa. Super. 2017). "Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains

numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Commonwealth v. Stiles*, 143 A.3d 968, 982 (Pa. Super. 2016) (citing *Commonwealth v. Garland*, 63 A.3d 339 (Pa. Super. 2013)). Based upon this Court's desire to apply Rule 1925 in a "predictable, uniform fashion," this Court has determined that waiver applies even where, as here, the Commonwealth fails to object and the trial court addresses the issue in its Rule 1925(a) statement. *Roche*, 153 A.3d at 1072.

In addition to the vagueness of Appellant's sufficiency-of-the-evidence argument in his concise statement, his argument is underdeveloped in his brief as well. Appellant neither states which of the convictions he is challenging, *see* Appellant's Brief at 3 (challenging the insufficiency of evidence as to "most of the offenses"), nor argues which specific elements were not met. For example, while Appellant makes general arguments regarding whether the Commonwealth proved that he was involved, he does not specify whether he is contesting his involvement in the pre-robbery conspiracy, the robbery and murder itself, or both. Other than setting forth the standard of review for sufficiency of the evidence claims, Appellant's argument is otherwise without citation to any legal authority. Therefore, Appellant has waived his challenge to the sufficiency of the evidence. *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (finding that Gibbs waived his sufficiency claim by failing to specify which elements

he was challenging in his concise statement and brief and by failing to cite to legal authority other than the general standard of review).

Even if Appellant did not waive the sufficiency claim for the reasons discussed above, he would still not be entitled to relief. Our standard of review in challenges to sufficiency of the evidence is to determine

> whether, viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 716 (Pa. Super. 2015) (citation omitted).

Appellant's sufficiency challenge essentially is a challenge to the reliability and credibility of Rosas, the main eyewitness whose testimony placed Appellant at the scene. A review of the sufficiency of the evidence does not include an assessment of the credibility of testimony; such a claim goes to the weight of the evidence, which as discussed *supra*, Appellant failed to preserve. ***Gibbs***, 981 A.2d at 282; ***Lewis***, 45 A.3d at 410. Further, by assailing the Commonwealth's purported failure to corroborate or

bolster Rosas's testimony with forensic or other evidence, Appellant ignores the fact that, if believed by the jury, Rosas's testimony is enough, by itself, to establish Appellant's participation during the robbery. Our Supreme Court

> has repeatedly refused to endorse the proposition that a particular type or class of evidence which is admitted at trial is, because of its intrinsic nature, insufficient as a matter of law to uphold a conviction—even if it is the only evidence adduced on the question of guilt. **See, e.g., Commonwealth v. Duncan**, [373 A.2d 1051 (Pa. 1977)] (holding that testimony of a single eyewitness, alone, was sufficient to convict even though it conflicted with other trial testimony). Even when there are well[-] recognized concerns regarding the reliability of evidence, such as in instances where evidence of guilt is provided by a criminal accomplice who is deemed a corrupt and polluted source, our Court has not categorically regarded all such evidence to be so inherently unreliable that it cannot, by itself, support a verdict of guilt. **See Commonwealth v. Mikell**, [729 A.2d 566, 570 (Pa. Super. 1999)] ("[A] verdict may be predicated upon the uncorroborated testimony of an accomplice."). Instead, our Court considers questions regarding the reliability of the evidence received at trial to be within the province of the finder-of-fact to resolve, and our Court will not, on sufficiency review, disturb the finder-of-fact's resolution except in those exceptional instances … where the evidence is so patently unreliable that the jury was forced to engage in surmise and conjecture in arriving at a verdict based upon that evidence.

**Commonwealth v. Brown**, 52 A.3d 1139, 1165-66 (Pa. 2012) (some citations omitted).

> Furthermore, as the trial court points out, Appellant's

> involvement in the crime was corroborated by evidence inclusive of his phone records showing an attempted call to the victim the day before the crime, when the parties were first scheduled to meet, and communications between [Appellant, Alleyne, and Rosas] just before the murders; messages from [Bridges's] cell phone to [Appellant], placing them together just before the crime; surveillance videos corroborating [Rosas's] testimony;

and testimony and evidence demonstrating that [Appellant] was with [Alleyne and Bridges] just seven minutes after the murder.

Trial Court Opinion, 3/1/2017, at 4 (record citations omitted). Thus, even if he had properly preserved the claim, Appellant's claim that his convictions cannot stand based on the lack of corroborating evidence is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 12/11/2017