J-S45010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARK ARMSTRONG, | |
| Appellant | No. 1566 EDA 2018 |

Appeal from the Judgment of Sentence Entered August 29, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002639-2016

BEFORE:  BENDER, P.J.E., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED NOVEMBER 13, 2019**

Appellant, Mark Armstrong, appeals *nunc pro tunc* from the judgment of sentence of 9 to 18 years' imprisonment, imposed after a jury convicted him of aggravated assault, 18 Pa.C.S. § 2702(a)(1).  On appeal, Appellant raises various claims, including challenges to the court's jury instructions, the discretionary aspects of his sentence, the court's admission of certain evidence, and the sufficiency and weight of the evidence to sustain his conviction.  After careful review, we affirm.

The trial court set forth a detailed recitation of the facts and procedural history of this case, which we adopt herein.  **See** Trial Court Opinion (TCO), 11/30/18, at 1-8.  Briefly, we note that Appellant's conviction stems from his

_____

[*] Retired Senior Judge assigned to the Superior Court.

shooting Hasan Paige, a pizza delivery driver, in the face, which resulted in Paige's wearing "metal headgear" for six months that was "screwed [through] his skin because his jaw was shattered." *Id.* at 4. At trial, Paige testified that he knew Appellant from a previous incident between the two men in 2010, and Paige identified Appellant as his assailant both at trial, and in a photo array that was presented to him several days after the shooting. *Id.*

At the close of Appellant's trial, the jury acquitted him of various offenses, including attempted murder and robbery, but convicted him of aggravated assault. On August 29, 2017, the court sentenced Appellant to the term of incarceration set forth above. He filed a post-sentence motion, which was denied. While Appellant did not file a timely notice of appeal, he subsequently filed a petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, seeking the reinstatement of his direct appeal rights. That petition was granted, and Appellant filed a *nunc pro tunc* appeal. Appellant complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the court filed its Rule 1925(a) opinion on November 30, 2018.

Herein, Appellant raises the following six issues for our review, which we have reordered for ease of disposition:

> I. Did the trial court erred [*sic*] and/or abuse its discretion when it gave the jury an instruction that [Appellant] could be found guilty based upon a theory of accomplice liability where no accomplice liability instruction was given to the jury or requested by counsel?

- 2 -

II. Is the evidence sufficient to support the conviction for aggravated assault?

III. Is the verdict against the weight of the evidence to such a degree that it shocks one's conscience?

IV. Did the trial court erred [*sic*] and/or abuse its discretion when it denied [Appellant's] motion for a mistrial based upon a police detective's reference to [Appellant's] prior incarceration in violation of an agreement precluding reference to the same?

V. Did the trial court erred [*sic*] and/or abuse its discretion when it denied [Appellant's] request to give a **Kloiber**[1] jury instruction?

VI. With respect to the sentence imposed upon Appellant by the lower court, did that court abuse its discretion by imposing an aggregate sentence of not less than 5, nor more than 10 years of incarceration followed by 12 years of probation?[2]

Appellant's Brief at 9-10.

We first address Appellant's challenge to a jury instruction, which was provided by the court in response to a question asked by the jurors during their deliberations. Initially, we note:

> An appellate court must assess the jury instructions as a whole to determine whether they are fair and impartial.

> The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration.

* * *

---

[1] **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954).

[2] Appellant misstates the sentence imposed by the court, which was 9 to 18 years' incarceration.

We will not rigidly inspect a jury charge, finding reversible error for every technical inaccuracy, but rather evaluate whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision. For [an] appellant to be entitled to a new trial, the jury instruction must have been fundamentally in error, or misled or confused the jury.

***Commonwealth v. Moury***, 992 A.2d 162, 178–79 (Pa. Super. 2010) (internal citations and quotation marks omitted).

Here, during the jury's deliberations, it asked the court the following question: "Can the defendant be charged with aggravated assault if we believe he did not pull the trigger but caused the victim to be shot[?]" N.T. Trial, 5/19/17, at 95. The court answered this question by simply stating, "yes." ***Id.*** at 98-99. Appellant objected to this answer and requested a mistrial, which was denied. On appeal, he contends that the court's answer was erroneous because it "instructed the deliberating jury that it could find [Appellant] guilty under a theory of accomplice liability where an accomplice liability instruction was never asked for, or given." Appellant's Brief at 26. In regard to legal authority to support his position, Appellant provides the following single sentence:

In ***Commonwealth v.*** [***Melvin***], 103 A.3d 1 (Pa. Super. 2014), the Pennsylvania Superior Court held that … the trial court erred, and violated [Rule] 647(A) of the Pennsylvania Rules of Criminal Procedure, when it instructed a jury on the topic of accomplice liability after closing arguments had been completed and the jury had begun its deliberations. … [***Id.*** at] 44.

Appellant's Brief at 23-24.

Rather than discuss Rule 647 or elaborate on the circumstances of ***Melvin***, Appellant instead devotes the remainder of his argument to insisting

that he was prejudiced by the court's answer to the jury's question because "the defense chose to forego evidence relevant to the actions of other individuals immediately after the trial court conducted a charging conference which disclosed that no instruction on accomplice liability or conspiracy would be given." *Id.* at 26.

Appellant's argument does not demonstrate that the court committed an abuse of discretion or an error of law. Initially, we agree with the Commonwealth that *Melvin* is distinguishable from the circumstances of the present case. As the Commonwealth explains:

> In *Melvin*, after the jury had been charged and had begun deliberations, the *Commonwealth* requested, for the first time, an accomplice liability charge. [*Melvin*, 103 A.3d] at 45. The trial court gave the charge. *Id.* This Court held that the instruction violated Pennsylvania Rule of Criminal Procedure 647(A)[3] because the court gave the instruction after [the] defendant gave [her] closing argument. *Id.* at 48. Here, in contrast, the Commonwealth never requested, and the trial court never gave,

---

[3] In 2015, a new subdivision (A) was added to Rule 647, and the former subdivision (A), which was addressed in *Melvin*, has been redesignated as subdivision (B). It reads:

> (B) Any party may submit to the trial judge written requests for instructions to the jury. Such requests shall be submitted within a reasonable time before the closing arguments, and at the same time copies thereof shall be furnished to the other parties. Before closing arguments, the trial judge shall inform the parties on the record of the judge's rulings on all written requests and which instructions shall be submitted to the jury in writing. The trial judge shall charge the jury after the arguments are completed.

Pa.R.Crim.P. 647(B).

any instruction on accomplice liability[.] (N.T.[,] 5/19/17[,] at 91). Therefore, **Melvin's** holding, which concerned surprise to the defendant resulting from the Commonwealth's last-minute request for an additional instruction, is inapplicable.

Commonwealth's Brief at 11 (emphasis in original).

We also point out that the **Melvin** panel explicitly distinguished the circumstances before it from a situation like the present case, "where a jury submits on its own motion a question to the court indicating confusion or a request for clarification…." **Melvin**, 103 A.3d at 48 (citation and internal quotation marks omitted). In such cases, "the court may properly clarify the jury's doubt or confusion" by providing additional instructions in the presence of all parties. **Id.** at 48-49 (quoting **Commonwealth v. Kidd**, 380 A.2d 416, 419 (Pa. Super. 1977)); **see also** Pa.R.Crim.P. 647(D) ("After the jury has retired to consider its verdict, additional or correctional instructions may be given by the trial judge in the presence of all parties…."). Thus, Appellant's case is clearly distinguishable from **Melvin**, and his reliance on that decision does not establish that the trial court violated Rule 647 by answering the jury's question.

Notwithstanding, we would also conclude that Appellant has failed to prove that he was prejudiced by the court's ostensible violation of Rule 647. **See Melvin**, 103 A.3d at 49-50 (concluding that a violation of Rule 647 requires reversal only where the defendant establishes that she was prejudiced). Appellant argues that he was prejudiced because he could have presented "additional evidence aimed at destroying a claim" that he was liable as an accomplice. Appellant's Brief at 24. However, he does not identify, let

alone discuss, what evidence he would have offered. In *Melvin*, we concluded that a similar assertion of prejudice, stated "in the most general terms" and without any explanation, was inadequate to "provide[] this Court with any basis to evaluate the degree (if any) of any actual prejudice resulting from the trial court's error." *Melvin*, 103 A.3d at 50. The same is true in the present case. Therefore, even if the court had violated Rule 647(B) in answering the question posed by the jury, Appellant would not be entitled to relief.

In regard to Appellant's remaining issues, we have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have considered the opinion of the Honorable Sierra Thomas Street of the Court of Common Pleas of Philadelphia County. We conclude that Judge Thomas Street's opinion sufficiently disposes of the five additional issues presented by Appellant. *See* TCO at 10-13 (concluding the evidence was sufficient to support Appellant's conviction of aggravated assault)[4]; *id.* at 13-15 (addressing Appellant's challenge to the weight of the evidence); *id.* at 18-21 (reviewing Appellant's contentions that prior bad acts evidence was improperly admitted at trial); *id.* at 21- 23 (rejecting Appellant's claim that the court erred by denying his request for a *Kloiber* jury charge); *id.* at 26- 28 (rejecting Appellant's challenge to the discretionary aspects of his

---

[4] However, we do not adopt the portion of Judge Thomas Street's sufficiency analysis that suggests his claim is waived because he also asserts a challenge to the weight of the evidence. *See* TCO at 11-12.

sentence).[5]  Accordingly, we adopt Judge Thomas Street's opinion addressing those issues as our own and affirm Appellant's judgment of sentence for the reasons set forth therein.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/19

---

[5] Judge Thomas Street addressed an additional claim involving the admission of prior bad acts evidence, which Appellant has abandoned on appeal.  **See** TCO at 15-17.  Consequently, we do not adopt that portion of her opinion.

**FILED**

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

2018 NOV 30 PM 1: 03

OFFICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT
OF PENNSYLVANIA

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : | **CP-51-CR-0002639-2016** |
| | : | |
| v. | : | |
| | : | **SUPERIOR COURT** |
| **MARK ARMSTRONG** | : | **1566 EDA 2018** |

## OPINION

THOMAS STREET, J.                                                                November 30, 2018

### I.    PROCEDURAL HISTORY

On December 30, 2015, Defendant, Mark Armstrong, was arrested and charged with criminal attempt-murder (F1),[1] aggravated assault (F1),[2] robbery-threat immediate serious injury (F1),[3] possession of a firearm by a prohibited person (F2),[4] firearms not to be carried without a license (F3),[5] carrying firearms in the public in Philadelphia (M1),[6] possession of an instrument of a crime with intent (M1),[7] theft by unlawful taking of moveable property (M1),[8] receiving stolen property (M1),[9] simple assault (M2),[10] and recklessly endangering another person (M2).[11] Theft by unlawful taking of moveable property, receiving stolen property, simple assault, and recklessly endangering another person were all disposed of at the lower court. All other charges were held

---

[1] 18 § 901 §§ A
[2] 18 § 2702 §§ A1
[3] 18 § 3701 §§ A1II
[4] 18 § 6105 §§ A1
[5] 18 § 6106 §§ A1
[6] 18 § 6108
[7] 18 § 907 §§ A
[8] 18 § 3921 §§ A
[9] 18 § 3925 §§ A
[10] 18 § 2701 §§ A
[11] 18 § 2705



CP-51-CR-0002639-2016 Comm. v. Armstrong, Mark
Opinion

8195913061

1

for court. On May 19, 2017, the jury returned with a verdict of not guilty on all charges except for aggravated assault. On August 29, 2017, Defendant was sentenced by this Court to a minimum of nine years and a maximum of 18 years.

## II.  FACTUAL HISTORY

Philadelphia Police Officer William Fitzgerald testified that he was working the midnight to 8 a.m. shift on December 18, 2015, when there was a loud bang on the station doors during roll call. (N.T. 05/16/17 Pp. 71-2). Officer Fitzgerald observed another officer at the door motioning for help with a victim who was bleeding from the face and upper body. (N.T. 05/16/17 P. 72). Officer Fitzgerald and his partner Officer Lemos grabbed the victim and took him to the hospital in a patrol car. (N.T. 05/16/17 P. 75). Officer Fitzgerald stated that the only question the victim answered was that he was shot at the 2100 block of Gould Street. (N.T. 05/16/17 P. 77). Officer Fitzgerald explained that he filled out a 75-48, but at the time the identity of the suspect was "unknown." (N.T. 05/16/17 Pp. 79-80; 92). After being interviewed by the Southwest Detectives, Officer Fitzgerald went back to 6500 Greenway to observe the scene of the crash where the victim fled from the shooting in his Pete's Pizza delivery car. (N.T. 05/16/17 P. 80-1).

Detective Kert Wilson testified that he recovered two videos from the December 18, 2015 incident: one from a corner grocery and another from a Chinese restaurant. (N.T. 05/16/17 Pp. 97-8). Detective Wilson recovered seven camera angles from the Chinese restaurant that taped the robbery. (N.T. 05/16/17 P. 98). Detective Wilson presented three versions of the video at trial: an unedited version; a second version that zooms in on the events and points an arrow at the person standing next to the car; and a third without the arrow and just magnification. (N.T. 05/16/17 P. 99-100). All three videos were shown to the jury. (N.T. 05/16/17 P. 100-4). The video showed

2

that a Pontiac with a silver bumper was blocking the front of the victim's car right before the shooting. (N.T. 05/16/17 P. 106).

Officer Ed Wright testified that he was working with Officer Schmidt when they received a radio call regarding a shooting that had taken place on the 2100 block of Gould Street on December 18, 2015. (N.T. 05/16/17 P. 109-11). Officer Wright observed the victim's delivery vehicle crashed into a parked vehicle at the intersection of Gould and Greenway with menus on the seat and a Pete's Pizza sign on top of the car. (N.T. 05/16/17 P. 100-11). Officers Wright and Schmidt watched the recovered video at the Chinese store the night of the shooting and used the footage to determine that the house the shooter ran into was 2120 South Gould Street, Philadelphia, Pennsylvania. (N.T. 05/16/17 Pp. 112-3; 116). Officer Wright testified that he created an arrest memo during his investigation to preserve the series of events of the night such as time, location, and other specifics. (N.T. 05/16/17 P. 117). In this memo, Officer Wright noted that there was a black car parked two car lengths in front of the victim before he was shot and sped off. (N.T. 05/16/17 P. 118). No bullet casings or witnesses were found on the scene. (N.T. 05/16/17 P. 126). Officer Wright testified that he and his partner questioned a man in front of 2120 South Gould Street, but he was not taken into custody. (N.T. 05/16/17 Pp. 126-9). Officer Wright also stated that he conducted a database search on the resident who lived at 2120 Gould Street, Zarah Hellen, and no connection to the shooting was found. (N.T. 05/16/17 P. 133).

On the second day of trial, the complainant, Hasan Paige, testified that he was working as a delivery driver for Pete's Pizza in December 2015. (N.T. 05/17/17 P. 7). Mr. Paige testified that on December 18, 2015, he was on a delivery to 2105 South Gould Street, Philadelphia, Pennsylvania when he was robbed at gun point and shot. (N.T. 05/17/17 Pp. 7-11). At around 11 p.m., an individual approached the passenger side of the victim's car where the window was

3

lowered and said "what you got for me." (N.T. 05/17/17 P. 10). The complainant handed the armed individual money, turned, and was shot in his right side and face. (N.T. 05/17/17 Pp. 10-1). Mr. Paige testified that for six months after the shooting he had to wear metal headgear screwed through his skin because his jaw was shattered. (N.T. 05/17/17 Pp. 11-2). As a result of the shooting, the complainant has a metal rod in his right arm and a metal plate in his jaw. (N.T. 05/17/17 P. 13). Mr. Paige identified the Defendant in court and testified that he knew the Defendant only by his street name, "Sutan." (N.T. 05/17/17 P. 14). Mr. Paige testified that the shooting took two to three minutes and after he was shot he drove up Gould Street to Greenway, crashed his car, got out, and then ran to the police station. (N.T. 05/17/17 P. 15). Once Mr. Paige arrived at the police station he collapsed and remembered waking up in the hospital. (N.T. 05/17/17 P. 16). Mr. Paige could not remember at trial whether or not he saw the gun during the robbery. (N.T. 05/17/17 P. 23-4). Mr. Paige also testified about how he identified the Defendant via photo array as the shooter and individual who chased him with a gun during a previous incident in 2010. (N.T. 05/17/17 P. 33).

Mr. Paige testified that he was released from the hospital on Christmas Eve, at which time he went to the Southwest Detectives office to identify his shooter. (N.T. 05/17/17 Pp. 16-7). Mr. Paige stated that he told police that he knew the shooter from a prior incident, where the shooter chased Mr. Paige with a gun. (N.T. 05/17/17 Pp. 18-9). The 2010 incident occurred after Mr. Paige fought the Defendant's friend and the Defendant then chased Mr. Paige with a gun down Daggett Street, the block parallel to Gould Street, which was the locale of the shooting. (N.T. 05/17/17 Pp. 18-20). Prior to the shooting, the last time Mr. Paige saw the Defendant was as the police chased the Defendant into a house on Daggett Street during the 2010 incident. (N.T. 05/17/17 Pp. 20-2). Mr. Paige testified that he then learned the Defendant's street name, "Sutan,"

4

when his sister-in-law and someone else he could not remember told him that someone was looking for him. (N.T. 05/17/17 P. 22; 71). Mr. Paige testified that on January 5, 2016, he went back to make a report to detectives about possible witness intimidation after learning that someone was looking for him and that he subsequently moved to a different part of the city. (N.T. 05/17/17 P. 37-8). Mr. Paige stated that his sister-in-law lived on Daggett Street and that he was going to see her in 2010 when he got in the fight with the Defendant's friend. (N.T. 05/17/17 P. 77). He also noted that his sister-in-law heard that "Sutan" was looking for Mr. Paige and she told him this three or four days before Mr. Paige was shot on the next block. (N.T. 05/17/17 Pp. 77-8). After testifying to the photo array on cross-examination, Mr. Paige noted that he previously testified at a Grand Jury hearing to recognizing the Defendant. (N.T. 05/17/17 Pp. 95-6).

Detective Christopher Sweeney, then a police officer, testified that on December 18, 2015, he and his partner helped place Mr. Paige in the back of a police car after he was shot and then proceeded to the scene of the crime. (N.T. 05/17/17 Pp. 102-3). A male who witnessed the victim run down the street toward the station tried to assist the officers in locating the crime scene. (N.T. 05/17/17 P. 104). Detective Sweeney observed a Dodge Colt at Gould and Greenway that had hit a parked car. (N.T. 05/17/17 Pp. 104-5). The vehicle had a broken window, blood on the ground next to the car, and a Pete's Pizza sign on the roof and menus in the window. (N.T. 05/17/17 Pp. 104-5). Detective Sweeney stated that he called Pete's Pizza, identified the victim and his recent deliveries, and then knocked on the door of his last delivery on Gould Street. (N.T. 05/17/17 Pp. 105-6). Detective Sweeney spoke with the two individuals in the house who had ordered the food, but they only heard the shooting and subsequent car crash following the delivery. (N.T. 05/17/17 P. 106). Detective Sweeney stated that Greenway was closed to traffic and held for detectives and Gould was also closed to traffic. (N.T. 05/17/17 P. 107). Detective Sweeney stated that he looked

5

for bullet casings, surveyed the scene, questioned a man on Gould Street who did not see anything, and also did not have any identification on record with the state. (N.T. 05/17/17 Pp. 108-9). Detective Sweeney documented this information. (N.T. 05/17/17 P. 108). The address on the pizza delivery receipt matched the phone number for one of the individuals who lived inside 2105 South Gould Street and was found to be not connected to the shooting by police. (N.T. 05/17/16 Pp. 110-1).

Next, Detective Francesco Campbell testified that Hasan Paige was released from the hospital and came in to identify his shooter on December 24, 2015. (N.T. 05/17/17 Pp. 120-3). And based on the information provided by Mr. Paige, he was able to develop a suspect and put a photo array together. (N.T. 05/17/17 Pp. 124-7). An array of six photographs was compiled and shown to Mr. Paige by another detective, known as the blind administrator. (N.T. 05/17/17 Pp.127; 154). The Defendant was identified by the victim as the shooter. (N.T. 05/17/17 P. 134). Detective John Brady then testified about how he conducted the photo array and asked the victim if the shooter was the person in each photograph. (N.T. 05/17/16 P. 154). Mr. Paige identified the Defendant as the person who shot him. (N.T. 05/17/17 P. 156).

On the last day of trial, Detective Craig Fife testified that he assisted Detective Slobodian with the investigation and then took over the investigation. (N.T. 05/18/17 P. 24). On or around December 24, 2015, he was contacted by Detective Campbell regarding the victim's identification of a suspect. (N.T. 05/18/17 P. 24-5). Detective Fife then prepared a search warrant for the Defendant's house which was executed by the Fugitive Task Force. (N.T. 05/18/17 P. 25-6). As a result of the search, a search warrant was also prepared and executed for the Defendant's Sprint phone records from December 18, 2015 to December 19, 2015. (N.T. 05/18/17 P. 28-9). The Defendant turned himself in during the investigation. (N.T. 05/18/17 P. 36). Detective Fife

6

testified that he and the prosecutor met with Mr. Paige at the district attorney's office regarding possible intimidation issues in the case on January 13, 2016. (N.T. 05/18/17 P. 36). Detective Fife also testified that the complainant identified the Defendant as "Sutan" based on information from the complainant's sister-in-law. (N.T. 05/18/17 P. 45).

The sole defense witness was Akua Bard, a childhood friend of the Defendant and an alibi witness. (N.T. 05/18/17 P. 61). Mr. Bard testified that he has known the Defendant since they were children and that they are like brothers. (N.T. 05/18/17 P. 61-2; 71). Mr. Bard testified that on December 18, 2015, the Defendant was with him at his house helping him move furniture. (N.T. 05/18/17 P. 61-2). Mr. Bard stated that he lived about three to five minutes from Gould Street and that he picked up the Defendant around dusk and took him to his house on the date in question. (N.T. 05/18/17 P. 64). Mr. Bard testified that he did not drive the Defendant back to his girlfriend's house on the 2100 block of Gould Street until it was dark out, but he did not remember the exact time. (N.T. 05/18/17 P. 65-6). Mr. Bard explained that when he attempted to turn up Gould Street there were several police cars and a number of cops on the street preventing them from going up the street, so he parked by the police station and went to look at the crash. (N.T. 05/18/17 P. 66). Mr. Bard also claimed that he has known "Sutan" since 2010 and the Defendant is not Sutan. (N.T. 05/18/17 P. 70).

On cross-examination, Mr. Bard confirmed that he spoke with the Defendant a number of times after the shooting occurred and that the Defendant called him and his wife at their house while incarcerated. (N.T. 05/18/17 P. 74-6). Mr. Bard testified that he was driving his wife's silver Ford 500, but he also owns a black Pontiac G-6 with a grey bumper on December 18, 2015. (N.T. 05/18/17 P. 76-7; 94). He noted that he had a hard time remembering the events and that he was bad with remembering times. (N.T. 05/18/17 P. 87-90). Mr. Bard did confirm, however, that

7

he was stopped by police driving a black 2007 Pontiac with a silver bumper on the 2100 block of South Gould Street for being double parked in September of 2016. (N.T. 05/18/17 P. 93-96). He mistakenly claimed that the Defendant was in the car with him on South Gould Street when the police stopped him but then corrected himself and said it was someone else. (N.T. 05/18/17 P. 98). Mr. Bard also admitted that he "smoke[s] weed and take[s] Xanax" and does not know what is going on with himself sometimes. (N.T. 05/18/17 P. 98).

On the last day of trial, the prosecutor read a number of stipulations into the record. (N.T. 05/19/17 P. 27-34). The stipulations are as follows: 206 phone calls were made to Akua Bard and Mahasin Bard in the time of this Defendant's arrest in December of 2015 and April of 2017; Police Officer J'Nean Gray-Caserta would testify that on June 4, 2010 she observed the Defendant on Daggett Street and pursued him into 2101 South Daggett Street where he was arrested; and that Detective Anthony Vega of the FBI Cellular Analysis Survey Team would testify that the cell phone towers the Defendant's phone was using placed him at either 2100 South Gould Street or 1757 South Edgewood Street at the time of the shooting. (N.T. 05/19/17 Pp. 27-31).

## II.   ISSUES

In the Pa. R.A.P. 1925(b) Statement of Matters Complained of on Appeal, the Defendant identifies the following issue(s):

A. The evidence was insufficient as a matter of law to convict Defendant of aggravated assault.
B. The verdict of guilty with respect to the charge of aggravated assault is against the weight of the evidence to such a degree as to shock one's conscience and sense of justice as the evidence showed that the Defendant could not have possibly shot the victim as he was conversing on a phone when the alleged shooting transpired.
C. The Trial Court erred and/or abused its discretion when it allowed into evidence testimony of a previous arrest of the Defendant where there had been no motion to admit the evidence filed prior to trial by the Commonwealth pursuant to Rule of Evidence 404(b) where the probative value was substantially outweighed by the prejudice to the Defendant.

8

D. The Trial Court made an error of law by not granting a mistrial when a Commonwealth witness, a police detective, deliberately, and in violation of a previous Court ruling, testified about Defendant's incarceration in a state correctional facility when describing how a photo array was composed.

E. The Trial Court made an error of law when answering simply "yes" after a question was asked by the jury which stated, "Can the defendant be charged with aggravated assault if we believe he did not pull the trigger but caused the victim to be shot." No jury charge was given regarding accomplice liability or conspiracy and no theory of either was presented by the Commonwealth. This answer did not provide the jury with the complete and/or accurate statement of the applicable and controlling law.

F. The Trial Court erred and/or abused its discretion when it refused to give a "Kloiber" charge where there was clear evidence that the identifying witness had trouble in identifying the alleged perpetrator.

G. Defendant's sentence is unduly harsh and excessive.

## III. STANDARD OF REVIEW

The standard of review is one of deference to the trial court. " *Commonwealth v. Giles*, 182 A.3d 460, 461–62 (Pa. Super. Ct. 2018). The issues raised in the defendant's appeal are all matters of discretion for the trial judge to determine. "In reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt." *Commonwealth v. Wise*, 171 A.3d 784, 790 (Pa. Super. Ct. 2017). "In considering a claim that the trial court erred in refusing to find that a verdict was against the weight of the evidence, 'appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.'" *Commonwealth v. Taylor*, 63 A.3d 327 (Pa. Super. Ct. 2013); *quoting Commonwealth v. Shaffer*, 40 A.3d 1250, 1253 (Pa. Super. Ct. 2012). Questions regarding the admissibility of evidence, the use of instructions and charges to be read to the jury, the evidence the jury will receive or review during deliberation, and the decision to grant a mistrial are all within the discretion of the trial court. See *Commonwealth v. Hairston*, 84 A.3d 657, 664–65 (Pa. 2014) (admission of evidence), *Commonwealth v. Fuller*, No. 3820 EDA 2016, 2018 WL 4076279, at *11 (Pa. Super. Ct. Aug.

9

27, 2018) (jury charge), *Commonwealth v. Cornelius*, 180 A.3d 1256, 1261 (Pa. Super. Ct. 2018) (mistrial), and *Commonwealth v. McLaine*, 150 A.3d 70, 75 (Pa. Super. Ct. 2016), *appeal denied*, 168 A.3d 1267 (2017) (sentencing). An abuse of discretion requires:

> not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Giles*, 182 A.3d at 461–62; *quoting Commonwealth v. Chmiel*, 738 A.2d 406, 510 (Pa. 1999) (citation omitted).

## IV. DISCUSSION

### A. THE EVIDENCE WAS SUFFICIENT TO FIND THE DEFENDANT GUILTY OF AGGRAVATED ASSAULT

The Defendant contends that the evidence was insufficient to convict him of aggravated assault. This Court disagrees.

Aggravated assault is defined as when one "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702 §§A1. Serious bodily injury is statutorily defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. *See Commonwealth v. Miller*, 172 A.3d 632, 640-2 (Pa. Super. Ct. 2017) *appeal denied*, 183 A.3d 970 (Pa. 2018). A handgun is capable of causing serious bodily injury or death. *Commonwealth v. Peer*, 684 A.2d 1077, 1081 (Pa. Super. Ct. 1996). "An attempt under § 2702(a)(1) requires a showing of some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury." *Commonwealth v. Matthew*, 909 A.2d 1254, 1257 (Pa. 2006) *citing Commonwealth v. Alexander*, 383 A.2d 887, 889 (Pa. 1978).

10

Aggravated assault requires intentional, knowing, or reckless conduct. 18 Pa.C.S.A. § 2702 §§A1. "A person acts intentionally with respect to a material element of an offense when . . . it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S. § 302(b)(1)(i). "As intent is a subjective frame of mind, it is of necessity difficult of direct proof." *Miller*, 172 A.3d at 641, *citing Commonwealth v. Matthews*, 870 A.2d 924, 929 (Pa. 2005). "[I]ntent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." *Id.* Intent to cause serious bodily injury is determined based on the totality of the circumstances as determined in *Commonwealth v. Alexander*, 383 A.2d 887 (Pa. 1978) and reaffirmed in *Commonwealth v. Matthews*, 909 A.2d 1254 (Pa. 2006). *See Commonwealth v. Fortune*, 68 A.3d 980, 984 (Pa. Super. Ct. 2013).

A challenge to the Commonwealth's version of events goes to the weight of the evidence and not its sufficiency. *Commonwealth v. Lewis*, 45 A.3d 405, 409 (Pa. Super. Ct. 2012). A claim challenging the credibility of the evidence also goes to weight and not sufficiency. *Id. See also, Commonwealth v. Wilson*, 825 A.2d 710, 713–14 (Pa. Super. Ct. 2003). Instead, in a sufficiency claim, "the entire record must be evaluated and all evidence actually received must be considered." *Lewis*, 45 A.3d at 409, *citing Troy*, 832 A.2d at 1092.

Before the merits of the case can be decided, the claims must be reviewed for possible waiver. *Commonwealth v. Manley*, 985 A.2d 256, 261 (Pa. Super. Ct. 2009). It has been established that "[w]eight of the evidence and sufficiency of the evidence are discrete inquires." *Davis*, 799 A.2d 2002. The Superior Court has found that "a challenge to the weight of the evidence concedes that the evidence was sufficient to sustain the verdict." *Commonwealth v. Jarowecki*, 923 A.2d 425, 433 (Pa. Super. Ct. 2007), *appeal granted in part, denied in part*, 947 A.2d 713 (2008); *citing Commonwealth v. Davis*, 799 A.2d 860, 865 (Pa. Super. Ct. 2002). *See*

11

*Manley*, 985 A.2d at 261. Despite possible waiver, the sufficiency claim should be dismissed for the reasons that follow.

A review of the entire trial record shows that the evidence convicting the Defendant of aggravated assault is sufficient to uphold the conviction. It is not the situation that the evidence in this case is so inconclusive that as a matter of law no probability of fact may be drawn from the circumstances. *Wise*, 171 A.3d at 790. The victim in this case, Hasan Paige, suffered horrific and traumatizing injuries as a result of the December 18, 2015 shooting. (N.T. 05/17/17 Pp. 10-13). Those injuries were caused when the Defendant, at close range, shot the victim during a robbery. (N.T. 05/17/17 Pp. 10-13). The Defendant was identified by the victim in three ways: first based on prior knowledge from a 2010 incident where the Defendant chased the victim with a gun, second in a photo array on Christmas Eve, 2015 just days after the shooting, and third in court. (N.T. 05/17/17 P. 17). Video surveillance was utilized by the Commonwealth at trial to corroborate the victim's testimony. (N.T. 05/17/17 P. 102).

The Defendant's alibi witness is far from reliable. Akua Bard, testified that he had a hard time remembering the events and that he was bad with remembering times. (N.T. 05/18/17 P. 87-90). In September of 2016 Mr. Bard was stopped by police driving a black 2007 Pontiac with a silver bumper on the 2100 block of South Gould Street for being double parked, despite testifying that he never drives that vehicle. (N.T. 05/18/17 P. 93-96). This was a car that he owned in December of 2015 and is similar to the vehicle that was caught on camera stopped in front of the victim's car right before the shooting. (N.T. 05/16/17 P. 120; 05/18/17 P. 93-96). Mr. Bard mistakenly testified that the Defendant was in the car with him on South Gould Street when the police stopped him in 2017, but then corrected himself and said it was someone else. (N.T. 05/18/17 P. 98). Mr. Bard admitted on the stand that he "smoke[s] weed and take[s] Xanax" and

12

does not know what is going on with himself sometimes. (N.T. 05/18/17 P. 98). With all reasonable inferences viewed in the light most favorable to the Commonwealth as verdict winner, the Defendant's alibi does not stand.

The evidence presented by the Commonwealth was sufficient to find the Defendant guilty of aggravated assault.

## B. THE CONVICTION OF THE DEFENDANT IS NOT AGAINST THE WEIGHT OF THE EVIDENCE

The Defendant contends that the verdict convicting him of aggravated assault was against the weight of the evidence. This court disagrees.

Concerning a post-sentence motion that the verdict was against the weight of the evidence, it is well-established that a new trial may only be granted by a trial court where the verdict was so contrary to the weight of the evidence it would "shock one's sense of justice." *Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa. Super. Ct. 2004) (*quoting Commonwealth v. Hunter*, 554 A.2d 550, 555) (Pa. Super. Ct. 1989)). "A new trial should not be granted because of a mere conflict in the testimony or because a judge on the same facts would have arrived at a different conclusion." *Commonwealth v. Widmer*, 744 A.2d 745, 751-752 (Pa. 2000). Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* at 752. Moreover, credibility determinations are solely within the province of the fact-finder, and "an appellate court may not reweigh the evidence and substitute its judgment for that of the finder of fact." *Commonwealth v. Taylor*, 63 A.3d 327 (Pa. Super. Ct. 2013); *quoting Commonwealth v. Shaffer*, 40 A.3d 1250, 1253 (Pa. Super. Ct. 2012). In considering a claim that the trial court erred in refusing to find that a verdict was against the weight of the evidence, "appellate review is limited

13

to whether the trial court palpably abused its discretion in ruling on the weight claim." *Taylor*, 63 A.3d at 327; *quoting Shaffer*, 40 A.3d at 1253.

It is well settled that the Superior Court cannot substitute its judgment for that of the trier of fact. *Miller*, 172 A.3d at 642; *citing Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa. Super. Ct. 2015), *appeal denied*, 138 A.3d 4 (Pa. 2016). "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Id.*; *citing Talbert*, 129 A.3d at 545. "Resolving contradictory testimony and questions of credibility are matters for the finder of fact." *Id.*

A review of the record demonstrations that the evidence is not so tenuous, vague, and uncertain where it would shock the conscious. *See Miller*, 172 A.3d at 642. The issue in this case is whether the Defendant shot Hasan Paige on December 18, 2015. It is beyond question that Mr. Paige suffered life threatening injuries on the day of the shooting, however, the identity of his shooter had to be proven beyond a reasonable doubt. The weight of the evidence presented at trial established that Mark Armstrong shot Hasan Paige. The victim identified the Defendant as the shooter days after the shooting, again in front of a Grand Jury, and then again at trial. (N.T. 05/17/17 Pp. 14; 95-6; 122-4). The identification is based on the victim's prior knowledge of the Defendant and from his observations during the shooting. (N.T. 05/17/17 P. 97). Furthermore, the car that blocked the victim on Gould Street before the shooting, a black Pontiac with a silver or grey bumper, matches a vehicle owned by the Defendant's close friend, Akua Bard. (N.T. 05/16/17 P. 106; 05/18/17 Pp. 93-6). Cell phone data that was stipulated to at trial places the Defendant at the shooting or Mr. Bard's house. (N.T. 05/19/17 Pp. 27-34). It was stipulated to that the Defendant and Mr. Bard spoke to each other 206 times while the Defendant was incarcerated; calling into question the veracity of the Defendant's only alibi witness. (N.T.

14

05/19/17 Pp. 27-34). Resolving contradictions in evidence is the role of the jury under *Miller*; however, it is clear from the record that the verdict is not tenuous, vague, or uncertain.

For the reasons stated above the verdict is not against the weight of the evidence. Moreover, where the evidence is sufficient to uphold a conviction, the verdict is not against the weight of the evidence.

## C. THIS COURT DID NOT ERR IN ALLOWING PRIOR BAD ACTS EVIDENCE AT TRIAL

The Defendant avers that this Court admitted prejudicial 404(b) character evidence into the record where no 404(b) notice was provided. This Court disagrees.

Rule 404(b)(2) establishes the permitted uses of "crimes, wrongs, or other acts" evidence. Pa.R.E. 404. Such evidence may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). Rule 404(b)(3) states that in a criminal trial the prosecution "must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial." Pa.R.E. 404(b)(3). The prosecutor's obligation to provide notice is not contingent upon a request from the defense. Pa.R.E. 404(b).

The use and exclusion of 404(b) prior bad acts evidence has been clearly delineated by the Supreme Court. The Pennsylvania Supreme Court has stated:

> Evidence of a defendant's prior criminal activity is inadmissible to demonstrate his bad character or criminal propensity. The same evidence may be admissible for various legitimate purposes, however, provided that its probative value outweighs the prejudicial effect likely to result from its admission . . . and an appropriate limiting instruction is given.

*Commonwealth v. Cox*, 115 A.3d 333 (Pa. Super. Ct. 2015); *quoting Commonwealth v. Paddy*, 800 A.2d 294, 307 (Pa. 2002) (citations omitted). "To be admissible under this exception, there must

15

be a specific 'logical connection' between the other act and the crime at issue which establishes that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." *Id.*; *quoting Commonwealth v. Ross*, 57 A.3d 85, 100 (Pa. Super. Ct. 2012) *(en banc)*, *appeal denied*, 72 A.3d 603 (Pa. 2013) (quotation marks and citations omitted).

The purpose of Rule 404 is to prevent the use of prior bad acts to show propensity or conformity on the part of the defendant with those bad acts. *Id.* "The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence." *Id.* However, evidence of crimes, wrongs, or other bad acts "may be admissible as res gestae when relevant to furnish the complete story or context of events surrounding the crime." *Commonwealth v. Crispell*, No. 722 CAP, 2018 WL 4537272, at *11 (Pa. Sept. 21, 2018). *See Commonwealth v. Weiss*, 81 A.3d 767, 798 (Pa. 2013); *see also Commonwealth v. Robinson*, 864 A.2d 460, 496–97 (Pa. 2004) (admitting prior bad acts as a part of a "chain, sequence, or natural development of events forming the history of a case"); *Commonwealth v. Williams*, 896 A.2d 523, 539 (Pa. 2006) ("This Court has recognized exceptions to Rule 404, for which evidence of other crimes may be introduced, including the res gestae exception which allows 'the complete story' to be told.") *(citing Paddy*, 800 A.2d at 308).

In this case, the matter was raised during a pretrial motion in limine. (N.T. 05/16/17 Pp. - 17). This Court ruled that the Defendant's prior arrest and conviction were excluded from evidence. (N.T. 05/16/17 P. 6-16). The victim was permitted to testify, however, as to how he knew the defendant and the circumstances surrounding that incident. (N.T. 05/16/17 P. 6-16). Therefore, this Court limited the extent to which evidence of Defendant's prior bad acts were admitted. (N.T. 05/16/17 P. 6-16).

16

Moreover, the evidence that was elicited falls squarely within the exceptions listed in Rule 404(b), as it was used to show motive and identity. Pa.R.E. 404(b). On Christmas Eve 2015, the complainant, Hasan Paige, gave a statement to police and identified the defendant out of a photo array as the individual who shot him. (N.T. 05/17/17 P. 122-124). Police developed the Defendant as a suspect due to a 2010 incident during which time Defendant chased the victim with a gun after the victim had a fight with Defendant's friend. (N.T. 05/17/17 P. 156). This evidence was presented at trial to establish the identity of Defendant as the shooter and his motive for attacking the victim, not as evidence to the Defendant's propensity to commit the crime. The evidence presented at trial concerning how the victim and defendant knew each other is also res gestae evidence under *Crispell*. The complete story of this case is that this was not a random shooting, but that the Defendant knew the victim. (N.T. 05/17/17 P. 122-124). The victim fought the Defendant's friend back in 2010, the Defendant chased the victim with a gun in 2010 and was followed into a house by police. After his arrest and guilty plea to illegal possession of a firearm, Defendant severed several years in state prison. Then five years later following his release searched for the victim. (N.T. 05/17/17 P. 156). Most of this evidence was excluded by this Court prior to the incident in question.

This Court did not err in admitting res gestae evidence and the victim's personal observations regarding a past encounter with the Defendant for the purposes of motive and identification.

17

**D. THIS COURT DID NOT ERR IN DENYING A MISTRIAL BECAUSE DEFENSE COUNSEL DID NOT TIMELY OBJECT AND THE ELICITED TESTIMONY WAS NOT PREJUDICIAL**

Defendant claims that this Court committed reversible error by denying his motion for mistrial after a detective testified that a photograph of Defendant in a photo array could have been from incarceration at a state correctional facility. This Court disagrees.

Pennsylvania precedent clearly states that defense counsel's objection must be timely. *Commonwealth v. Tucker*, 143 A.3d 955, 962 (Pa. Super. Ct. 2016), *appeal denied sub nom. Commonwealth v. Tucker*, 165 A.3d 895 (Pa. 2017). "In order to preserve an issue for appellate review, an aggrieved party must make a timely and specific objection." *Id.* (finding the delay in objecting after "completion of direct examination and cross-examination" of two witnesses before objecting was too long a delay); *See Allied Elec. Supply Co. v. Roberts*, 797 A.2d 362, 364–65 (Pa. Super. Ct. 2002) (Objection after the witness "completed his testimony on direct, cross, redirect and recross. This was too late."), *Commonwealth v. Montalvo*, 641 A.2d 1176, 1184–85 (Pa. Super. Ct. 1994) (finding waiver where no objection was made.).

The Pennsylvania Rules of Criminal Procedure require an attorney to object immediately to prejudicial evidence elicited at trial. *Tucker*, 143 A.3d at 962. Rule 605 states, "When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." 234 Pa. Code Rule 605. Even two to three minutes of delay is enough time to waive the argument. *Commonwealth v. Smith*, 410 A.2d 787, 790 (Pa. 1980) (finding mistrial improper where defense counsel "waited approximately two or three minutes, until the prosecutor finished direct examination and the court called a recess before

18

making the motion for mistrial.") Manifest necessity exists where a reference lends weight to and establishes evidence of some prejudice. *Id.*

Here, defense counsel objected to the detective's statement several minutes after it occurred. (N.T. 05/17/17 Pp. 157-8; 163). When asked if there was an objection at the time the testimony was given defense counsel explained the reason for the delay stating, "Judge, I was waiting to object. It was already too late because he already spoke." (N.T. 05/17/17 P. 164). This delay proves fetal to Defendant's claim as the objection is untimely. At this time the detective had finished his direct examination, cross-examination, re-direct, and re-cross. (N.T. 05/17/17 Pp. 157-63). As was the case in *Allied Elec.*, *Tucker*, and *Smith*, defense counsel's objection is too late. Even if defense counsel's objection was timely the testimony did not violate Rule 404 or prejudice the jury.

The Superior Court's evaluation is based on whether the defendant received a fair trial, not a perfect one. *Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. Ct. 2009) *citing Commonwealth v. Rios*, 721 A.2d 1049, 1054 (Pa. 1998). "Passing references to criminal activity will not necessarily require reversal unless the record illustrates that prejudice results. 'Prejudice results where the testimony conveys to the jury, either expressly or by reasonable implication, the fact of a prior criminal offense.'" *Commonwealth v. Laughman*, 452 A.2d 548, 549 (Pa. Super. Ct. 1982) *quoting Commonwealth v. Nichols*, 400 A.2d 1281, 1282 (Pa. 1979).

The Pennsylvania Supreme Court addressed a similar issue concerning possible passing references to past criminal activity in *Commonwealth v. Young*. 849 A.2d 1152, 1155 (Pa. 2004). The court in *Young* reaffirmed the *Allen* test in analyzing this type of evidence. *Commonwealth v. Allen*, 292 A.2d 373 (Pa. 1972). The *Allen* test is as follows:

> [A]fter the reference to a photograph the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engage[d]

19

in prior criminal activity. A mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference; so too, where it appears on the face of the record that there is an explanation of the police possession of the photograph unrelated to any inference of prior criminal activity.

*Young*, 849 A.2d at 1155; *quoting Allen*, 292 A.2d at 375. "The nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required." *Commonwealth v. Guilford*, 861 A.2d 365, 370 (Pa. Super. Ct. 2004); *quoting Commonwealth v. Richardson*, 437 A.2d 1162, 1165 (Pa. 1981) (citation omitted).

Detective James Brady was the last witness to testify on May 17, 2017. (N.T. 05/17/17 P. 151). Detective Brady was the blind administrator of the victim's photo array. (N.T. 05/17/17 P. 154.) The Detective testified about where the photos in the array may have originated. (N.T. 05/17/17 P. 157-8). The testimony follows:

Q. There is an index form that is attached to this photo array; is that correct?
A. Correct.
Q. Does that give any identifying information about the individuals that are in this photo array, and the position that they are in the array?
A. Yes. It has their photo position, also their State ID number. In some cases, there is a State ID, City ID or Philadelphia ID. In this case, Detective Campbell used State ID photos, their name and the space says, date of arrest.
Q. That is actually the date of the photograph?
A. Correct, that could be a day or two later. It could be that if they are in State custody when they are released, that is the photo date.
Q. It could be the date that you got your picture taken at the DMV, correct?
A. Correct.
Q. That spot is actually for the date that the photo was taken?
A. Correct.
Q. Is there a date for the photograph that was shown of Mark Armstrong, this defendant?
A. Yes. The date of the photo was 5/21/15.
Q. Approximately, seven months prior to when this photo array was shown?

20

**A.** Approximately.

(N.T. 05/17/17 P. 157-8). The testimony outlined above is a mere passing reference to criminal activity on the part of the Defendant. Furthermore, any error on the part of the Detective was cured by the prosecutor's follow up questioning about other sources for the photo. (N.T. 05/17/17 P. 158). This encounter was not enough to prejudice the jury. The prosecutor acted to cure the reference, which did not include any language that explicitly referenced the Defendant's actual prior arrest and/or conviction history. The reference was not intentional on the part of the Commonwealth. In fact, prior to Detective Brady's testimony, the Commonwealth alerted this Court to the fact that defense counsel mentioned the date of the photo during the cross-examination of the previous witness, Detective Francesco Campbell, who had created the photo array. (N.T. 05/17/17 P. 150). As such, a mistrial was not warranted.

**E. THIS COURT DID NOT ERR BY DENYING DEFENDANT'S REQUEST FOR A KLOIBER CHARGE**

The Defendant contends that this Court erred by not providing a Kloiber charge to the jury. This Court disagrees.

A Kloiber charge is given to address issues with a witness's identification of the Defendant. *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954). There are three specific identification issues that would warrant a Kloiber charge. "A Kloiber charge is appropriate where there are special identification concerns: a witness did not have the opportunity to clearly view the defendant, equivocated in his identification of a defendant, or had difficulty making an identification in the past." *Commonwealth v. Reid*, 99 A.3d 427, 448 (Pa. 2014); *citing Commonwealth v. Rollins*, 738 A.2d 435, 448 n. 14 (Pa. 1999) and *Commonwealth v. Gibson*, 688 A.2d 1152, 1163 (Pa. 1997). The court must "distinguish opportunity to observe from quality of observation" when determining if a Kloiber charge is required. *Commonwealth v. Cleveland*, 703 A.2d 1046, 1049 (Pa. Super. Ct.

21

1997). *Cf. Commonwealth v. Simmons*, 647 A.2d 568 (Pa. Super. Ct. 1994) and *Commonwealth v. Jamison*, 171 A.2d 541 (Pa. Super. Ct. 1961).

An independent basis for the identification such as prior knowledge weakens the necessity for giving a Kloiber charge. "When the witness already knows the defendant, this prior familiarity creates an independent basis for the witness's in-court identification of the defendant and weakens ineffectiveness claims based on counsel failure to seek a Kloiber instruction." *Cleveland*, 703 A.2d at 1049; *quoting Commonwealth v. Ali*, 10 A.3d 282, 303 (Pa. 2010). Despite issues that may arise with a witnesses ability to make an identification, prior knowledge of the defendant is an independent foundation for the identification and strengthens the witness's testimony. *Id.*

The Superior Court has found that "the trial court has wide discretion in fashioning jury instructions." *Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. Ct. 2006); *See Atwell v. Beckwith Machinery Co.*, 872 A.2d 1216, 1222 (Pa. Super. Ct. 2005); *Angelo v. Diamontoni*, 871 A.2d 1276, 1279 (Pa. Super. Ct. 2005). "The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal." *Commonwealth v. Miller*, 172 A.3d 632, 645 (Pa. Super. Ct. 2017), appeal denied, 183 A.3d 970 (Pa. 2018); *quoting Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. Ct. 2013).

The Superior Court's review is based on the record at trial. *See Thomas*, 904 A.2d at 970. "[I]t has long been the rule in this Commonwealth that a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1257 (Pa. Super. Ct. 2014). The reviewing court must determine if the trial court "abused its discretion or committed an error of law." *Commonwealth v. Clouser*, 998 A.2d 656, 658 (Pa. Super. Ct. 2010). "In reviewing a challenge to the trial court's refusal to

22

give a specific jury instruction, it is the function of [the Superior] Court to determine whether the record supports the trial court's decision." *Buterbaugh*, 91 A.3d at 1257, *citing Thomas*, 904 A.2d at 970.

Defendant requested a Kloiber charge at trial. (N.T. 05/17/17 P. 9). No such charge was necessary. This Court, however, did give a 407(A) "Identification Testimony—Accuracy Not in Doubt" charge. 4.07A (Crim) Identification Testimony—Accuracy Not in Doubt, Pa. SSJI (Crim), §4.07A (2016). This case does not meet any of the requirements laid out in *Reid*. The witness clearly viewed the Defendant at the scene of the crime when he was robbed. (N.T. 05/17/17 P. 13-14). The victim positively identified the Defendant in a photo array and did not have difficulty making the identification. (N.T. 05/17/17 P. 156). The Defense may be able to argue that the quality of the observation was diminished due to the short time span of the robbery and the victim's injury; however, the record is clear that the victim had an opportunity to observe the individual who shot him. (N.T. 05/17/17 P. 13-14). The victim's prior knowledge of the Defendant serves as an independent basis for the identification and weakens the claim for a Kloiber charge under *Cleveland*.

Therefore, due to the victim's prior knowledge of the defendant, photo array identification, and in-court identification of the Defendant, no Kloiber charge was necessary.

F. **THIS COURT DID NOT ERR WHEN ANSWERING A JURY QUESTION DURING DELIBERATIONS WITH "YES" BECAUSE IT WAS AN ACCURATE STATEMENT OF THE LAW**

The Defendant claims that the trial court inaccurately stated the law when it answered a jury question in the affirmative. This Court disagrees.

In responding to a jury's question during deliberations the court need only respond to the question asked. *Commonwealth v. Hobson*, 398 A.2d 1364, 1367 (Pa. 1979). "[A] court need only

23

respond to the precise question posed by the jury and, absent an erroneous response, need not elaborate beyond the jury's question." *Id.* "[T]he trial court is not obligated to give further instructions beyond those requested by the jury." *Id.* The scope of supplemental instructions is based in the sound discretion of the trial judge. *Commonwealth v. Davalos*, 779 A.2d 1190, 1195 (Pa. Super. Ct. 2001). "[T]he court has the duty to give such additional instructions on the law as the court may think necessary to clarify the jury's doubt or confusion." *Id.*; *citing Commonwealth v. Washington*, 418 A.2d 548, 552 (Pa. Super. Ct. 1980).

Aggravated assault is defined as when one "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702 §§A1. Serious bodily injury is statutorily defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. *See Miller*, 172 A.3d at 640-2. A handgun is capable of causing serious bodily injury or death. *Peer*, 684 A.2d at 1081. "An attempt under § 2702(a)(1) requires a showing of some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury." *Matthew*, 909 A.2d at 1257.

A defendant can intentionally cause serious bodily injury through the actions of another and be found guilty of aggravated assault. *See Commonwealth v. Bullock*, 170 A.3d 1109, 1119 (Pa. Super. Ct. 2017), *reargument denied* (Oct. 27, 2017), *appeal denied*, 184 A.3d 944 (Pa. 2018); and *Commonwealth v. Fortune*, 68 A.3d 980, 984 (Pa. Super. Ct. 2013) (finding that the necessary intent may sustain an aggravated assault conviction based on the totality of the circumstances).

> "A person acts intentionally with respect to a material element of an offense when . . . it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S. § 302(b)(1)(i). "As intent is a subjective frame of mind, it is of necessity difficult of direct proof." *Commonwealth v. Matthews*, 870 A.2d 924, 929

24

(Pa. Super. Ct. 2005) (citations omitted). "[I]ntent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." *Id.*

*Id.* In *Bullock*, the defendant was found guilty of aggravated assault when he instructed another person to turn off the electricity in a house and in doing so caused serious bodily injury to another. *Id.* The proof of such intent at trial may be purely circumstantial. *Id.* "A conviction may be sustained wholly on circumstantial evidence, and the trier of fact — while passing on the credibility of the witnesses and the weight of the evidence — is free to believe all, part, or none of the evidence." *Id.* at 1119; *citing Commonwealth v. Melvin*, 103 A.3d 1, 39 (Pa. Super. Ct. 2014).

During deliberations, the jury asked a question to this Court: "Can the defendant be charged with aggravated assault if we believe he did not directly pull the trigger but caused the victim to be shot?" After discussing the question with counsel and hearing argument, this Court wrote "yes" on the question and sent that back to the jury. (N.T. 05/19/18 Pp. 98-99. At that point, this Court had already instructed the jury in the relevant law and defined the charges. (N.T. 05/19/17 Pp. 41). The court was only under the obligation to respond to the question asked under *Hobson*. The Defendant was charged with aggravated assault under § 2702(a)(1), and as such, this Court was correct in answering "yes" to the jury's question.

As was the case in *Bullock*, there is circumstantial evidence to prove that the Defendant intended to cause serious bodily injury to the victim. The jury's question is asking just that, can the Defendant be found guilty of aggravated assault if we believe he intended to cause the victim to be shot. Evidence was presented to that effect, Mr. Paige testified that his sister-in-law told him three or four days before he was shot that "Sutan" was looking for him. (N.T. 05/17/17 Pp. 77-8). By answering "yes" this Court correctly articulated the law as stated in *Bullock*. This Court, and the appellate court in its review, "may not weigh the evidence and substitute its judgment for the fact-finder." *Id.* The jury asked if the Defendant can be found guilty if it was his intent to cause

25

the victim to be shot even if he didn't pull the trigger. This Court answered "yes" in accordance with the law.

For the reasons stated above, the law was not misstated when this Court answered the jury's question affirmatively.

G.    DEFENDANT'S SENTENCE IS NOT UNDULY HARSH OR EXCESSIVE BECAUSE

Defendant claims that his sentence for aggravated assault, a first degree felony, is unduly harsh and excessive. This Court disagrees.

The Guidelines created by the Pennsylvania Commission on Sentencing do not have the force of law. *Commonwealth v. Septak*, 518 A.2d 1284 (Pa. 1986). "[T]he sentencing guidelines are advisory only." *Commonwealth v. McLaine*, 150 A.3d 70, 77 (Pa. Super. Ct. 2016), *appeal denied*, 168 A.3d 1267 (Pa. 2017); *quoting Commonwealth v. Griffin*, 804 A.2d 1, 8 (Pa. Super. Ct. 2002). The Pennsylvania Supreme Court has stated,

> [T]he guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors-they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence.

*Commonwealth v. Holiday*, 954 A.2d 6 (Pa. Super. Ct. 2008); *quoting Commonwealth v. Walls*, 926 A.2d 957, 964 (Pa. 2007). "The guidelines are merely one factor among many that the court must consider in imposing a sentence." *Commonwealth v. Yuhasz*, 923 A.2d 1111, 1118 (Pa. 2007); *citing Commonwealth v. Sessoms*, 532 A.2d 775, 781 (Pa. 1987).

The procedure for determining a guideline sentence is Pa. Code § 303.2. The Pennsylvania Superior Court has found that "where the sentencing court imposed a standard-range sentence with the benefit of a pre-sentence report, we will not consider the sentence excessive." *Commonwealth v. Corley*, 31 A.3d 293, 298 (Pa. Super. Ct. 2011). The Superior Court assumes the sentencing

26

court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Id. quoting Commonwealth v. Devers,* 546 A.2d 12, 18 (1988). Under 42 Pa.C.S. § 9781(d), when reviewing a sentence the appellate court must have regard for the following:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
> (3) The findings upon which the sentence was based.
> (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d). "[R]ejection of a sentencing court's imposition of sentence on unreasonableness grounds [should] occur infrequently, whether the sentence is above or below the guidelines ranges." *Corley,* 31 A.3d at 298.

The guideline sentence for first degree felony conviction of aggravated assault is an offense gravity score of 11. (N.T. 08/28/17 Pp. 5-6); Pa. Code § 303.15. The Defendant possessed a deadly weapon and so the "Deadly Weapon Enhancement" applies. (N.T. 08/28/17 Pp. 5-6); Pa. Code §303.17(b). The Defendant also has a prior record score of 5. (N.T. 08/28/17 Pp. 5-6). This makes the Defendant's minimum guideline sentence 90 to 108 months or seven and a half to nine years. Pa. Code §303.17. Defendant Mark Armstrong was sentenced by this Court to a minimum of nine years and a maximum of 18 years. (N.T. 08/29/17 P. 14). The Pennsylvania Sentencing Guidelines address only the minimum sentence. Aggravating circumstances would allow for a 12 month deviation from the guideline sentence. §303.17(b). The nine year minimum the Defendant must serve before being eligible for probation and parole is within the standard guideline minimum and 12 months less than the aggravated minimum amount. §303.17(b). Considering that the Defendant was convicted of aggravated assault where a man was shot at close range the sentence in this case is not unduly harsh or excessive.

27

## V.  CONCLUSION

For all of these reasons, this court's decision should be affirmed.

BY THE COURT:

SIERRA THOMAS STREET, J.

Dated: November 30, 2018

28