J-S27033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                 :          PENNSYLVANIA
                                 :
              v.                    :
                                 :
                                 :
TAHSIYN JACKSON              :
                                 :
           Appellant      :    No. 2545 EDA 2023

Appeal from the Judgment of Sentence Entered May 23, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001138-2022

BEFORE:   LAZARUS, P.J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED DECEMBER 19, 2024**

Appellant Tahsiyn Jackson appeals the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after a jury convicted Appellant of conspiracy to commit robbery, robbery, robbery of a motor vehicle, aggravated assault, carrying a firearm without a license, carrying a firearm on the streets of Philadelphia, and possession of an instrument of crime. Appellant raises challenges to the sufficiency and weight of the evidence supporting his convictions and asserts that the trial court abused its discretion in imposing an excessive sentence. After careful review, we affirm.

The trial court aptly summarized the factual background of this case as follows:

> At trial, the Commonwealth presented the testimony of Emergency Medical Technician (EMT) Eric Michalski, Philadelphia

---

[*] Former Justice specially assigned to the Superior Court.

Police Detectives Michael Repici and Thomas Demalto, and Philadelphia Police Officers Mike Guillaume, Geoffrey Ford, Christopher Smith and Robert Heeney. The Commonwealth also presented video recordings from several surveillance and body-worn cameras. …

On February 23, 2020, at approximately 5:08 p.m., [Appellant], together with co-defendant Zhyjier Boozer, entered the M&M Convenience Store located at 2235 Cecil B. Moore Avenue in Philadelphia. They exited the store less than a minute later but remained outside on the sidewalk near the entrance to the store. While they were standing outside, they observed the victim, Shawn Newman, walking down the street. Immediately after observing Mr. Newman, [Appellant] and Mr. Boozer stepped briefly back into the entrance area of the store, and Mr. Boozer pulled out a silver handgun out from the front pocket of [Appellant's] sweatshirt. Mr. Boozer then placed the handgun into the front waistband of his own pants, under his jacket.

[Appellant] and Mr. Boozer then proceeded to follow Mr. Newman as he walked east on Cecil B. Moore Avenue toward N. Croskey Street. They followed Mr. Newman into the nearby Town Supermarket located at 2229 Cecil B. Moore Avenue. After Mr. Newman exited the supermarket, [Appellant] and Mr. Boozer continued to follow Mr. Newman east on Cecil B. Moore Avenue. Mr. Newman then turned left onto N. Croskey Street, and [Appellant] and Mr. Boozer continued to follow him on N. Croskey Street. As. Mr. Newman was walking along N. Croskey Street, he turned and faced [Appellant] and Mr. Boozer. Two seconds later, Mr. Newman sprinted across the street as [Appellant] and Mr. Boozer chased after him.

At approximately 5:12 p.m., a 911 police dispatcher received two calls from individuals who reported a shooting near the area where [Appellant] and Mr. Boozer chased Mr. Newman. At approximately 5:13 p.m., Mr. Newman himself called 911 and reported that he "just got carjacked" by two black males at the intersection of N. Croskey and Cecil B. Moore. Moments later, Officer Mike Guillaume, who was wearing a body-worn camera, observed that Mr. Newman was suffering from a gunshot wound to the right buttock. Officer Guillaume also observed fired cartridge casings (FCC) on the street. Mr. Newman told Officer Guillaume that his attackers were two young men who had followed him out of the store on Cecil B. Moore Avenue. Mr. Newman explained that the men robbed him and took his vehicle,

which had been parked on N. Croskey Street. Officers ultimately located and recovered 11 FCCs from a 9 mm firearm at the 1700 block of N. Croskey Street. EMT Eric Michalski later arrived at the scene and transported Mr. Newman to the emergency room at Temple University Hospital. Medical records showed that Mr. Newman suffered a graze wound from a gunshot to his buttock and a second gunshot wound to his left foot and ankle.

Following the shooting, Detective Michael Repici asked Officer Christopher Smith to review surveillance videos obtained near the time of the shooting in an effort to identify the suspects in the videos. Officer Smith was familiar with the neighborhood from his daily patrols. In reviewing the videos, Officer Smith identified Mr. Boozer based on his experience in the area. Officer Smith then located an Instagram account associated with Mr. Boozer featuring several photos of him. One of the photographs showed [Appellant] together with Mr. Boozer. In the photograph, they are wearing some of the same clothing that they are seen wearing in the surveillance videos. Another photo from the Instagram account, posted the day prior to the shooting, shows Mr. Boozer holding a silver firearm up to his face. The firearm is similar to the firearm seen in the surveillance videos.

[Appellant] did not have a valid license to carry a firearm in the Commonwealth of Pennsylvania at the time of the shooting. He also had a prior conviction from Bucks County that prohibited him from possessing a firearm. More specifically, in 2018, [Appellant] pled guilty to burglary, in violation of 18 Pa.C.S. § 3502(a)(2), a first-degree felony.

Trial Court Opinion (T.C.O.), 11/20/23, at 2-5.

After Appellant was arrested and charged with the aforementioned crimes, he proceeded to a bifurcated trial where he was tried jointly with his co-defendant Mr. Boozer. At the conclusion of the trial, the jury found Appellant guilty of conspiracy to commit robbery, robbery, robbery of a motor vehicle, aggravated assault, carrying a firearm without a license, carrying a firearm on the streets of Philadelphia, and possession of an instrument of

- 3 -

crime. In a separate waiver trial, the trial court found Appellant guilty of possession of a firearm by a prohibited person.

On May 23, 2023, the trial court sentenced Appellant to an aggregate term of fourteen to twenty-eight years' imprisonment to be followed by five years' reporting probation. Appellant filed timely post-sentence motions, which the trial court denied on September 25, 2023.

Appellant filed a timely appeal and complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant raises the following issues for our review:

> I. Was the evidence sufficient to support Appellant's convictions for conspiracy, aggravated assault, robbery, robbery of a motor vehicle, possessing an instrument of crime and violations of the Uniform Firearms Act where the evidence failed to show that Appellant possessed a firearm or provided one to his co-defendant in the moments before Mr. Newman was shot and his vehicle was taken?
>
> II. Were the verdicts against the clear weight of the evidence where there was no live witness to the shooting or vehicle theft and where the Commonwealth offered no evidence of a motive or physical evidence connecting either Appellant or his co-defendant to the crimes?
>
> III. Did the trial court abuse its discretion in sentencing Appellant to a manifestly excessive sentence of imprisonment where the court based its sentence solely on the severity of the offense and failed to properly weigh all relevant sentencing factors, including Appellant's difficult childhood, severe mental health history, and lack of a prior record for violent offenses?

Appellant's Brief, at 5.

First, we evaluate Appellant's challenges to the sufficiency of the evidence supporting his convictions. This Court's standard of review of a challenge to the sufficiency of the evidence is well-settled:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. ***Commonwealth v. Moreno***, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. ***Commonwealth v. Hartzell,*** 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. ***Moreno, supra*** at 136.

***Commonwealth v. Juray***, 275 A.3d 1037, 1042 (Pa.Super. 2022) (quoting ***Commonwealth v. Koch,*** 39 A.3d 996, 1001 (Pa.Super. 2011)).

As noted above, Appellant was convicted of conspiracy to commit robbery, robbery, robbery of a motor vehicle, aggravated assault, carrying a firearm without a license, carrying a firearm on the streets of Philadelphia, and possession of an instrument of crime. Appellant does not challenge any specific element of any of the aforementioned crimes, but argues that the Commonwealth failed to present sufficient evidence to show that 1) he or his co-defendant were the perpetrators that shot the victim and stole his car or that 2) Appellant was in actual possession of a firearm. Appellant asserts that the Commonwealth failed to present any "live witness testimony" or physical evidence linking him to the crime and alleges that he was merely present at the scene of the crime.

- 5 -

The Commonwealth presented sufficient circumstantial evidence to allow a jury to infer that Appellant and his co-defendant, Boozer, were the perpetrators of these crimes. Video surveillance footage recorded Appellant and Boozer at the same location of the victim and captured the moments in which Appellant and Boozer began to follow the victim. Thereafter, the camera footage clearly showed Appellant and Boozer chase the victim down the street. While the surveillance videos did not record the moments in which Appellant and Boozer caught up to the victim, 911 dispatchers received three calls (one from the victim himself) reporting that there had been a shooting just four minutes after Appellant, Boozer, and the victim went out of the view of the recording cameras.

The victim told the responding officers that he had been shot and carjacked by "two young bulls" that had been following him. The victim was also able to describe the heights of Appellant and Boozer. In subsequent social media searches, investigators were able to find photographs of Appellant and Boozer wearing some of the same items of clothing that they were seen wearing in surveillance videos.

Although Appellant claims that there was no evidence that he possessed a firearm, the surveillance videos show Boozer remove an item, which the Commonwealth alleged was a firearm, from Appellant's hooded sweatshirt immediately before the men begin to follow the victim. When we view all of the evidence in the light most favorable to the Commonwealth as verdict winner, the prosecution presented ample evidence for the jury to conclude

that Appellant and Boozer were the individuals responsible for conspiring to shoot the victim and rob him of his vehicle and that both Appellant and Boozer were in joint possession of the firearm used to shoot the victim. As a result, Appellant's sufficiency claims have no merit.

Appellant also argues that the trial court abused its discretion in refusing to find the jury's verdict was against the weight of the evidence. In reviewing a challenge to the weight of the evidence, we are guided by the following principles:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> ***Commonwealth v. Widmer***, 560 Pa. 308, 319-20, 744 A.2d 745, 751-52 (2000) (citations, footnotes and quotation marks omitted). Thus, to allow an appellant "to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court." ***Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa.Super. 2015) (internal citation omitted).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 619 Pa. 423, 64 A.3d 1049, 1055 (2013) (emphasis in original).

*Juray*, 275 A.3d at 1046–47.

Appellant's challenge to the weight of the evidence reiterates his claims in his sufficiency argument. Appellant highlights that the prosecution failed to present any eyewitnesses to the event and the victim did not provide a physical description of Appellant. Appellant also argues that the prosecution did not present any physical evidence connecting Appellant to the crimes as the officers failed to locate the firearm used in the shooting or discover any fingerprints in the stolen vehicle, which was eventually found parked several blocks away. Further, Appellant asserts there was no evidence presented to show Appellant or Boozer knew the victim or had any reason to rob or harm him. Appellant asks this Court to find that these discrepancies "undermine[] confidence in the jury's verdicts [such] that a new trial is required in the interest of justice." Appellant's Brief, at 17.

As noted above, the Commonwealth presented ample evidence for the jury to conclude that Appellant, acting together with his co-defendant, followed the victim away from the convenient store, chased the victim down the street, shot the victim twice, and stole his vehicle. The victim's statement that he was shot and carjacked by two men that were following him was corroborated by surveillance video footage. The jury, in its role as factfinder, was free to believe all, part, or none of the evidence presented at trial and was responsible for determining the credibility of the witnesses. ***Commonwealth v. James***, 297 A.3d 755 (Pa.Super. 2023). We find no abuse of discretion in the trial court's assessment that the jury's verdict was supported by the weight of the evidence.

Lastly, Appellant argues that the trial court abused its discretion in imposing a manifestly excessive sentence, alleging that the trial court focused solely on the severity of the offense and failed to properly weigh all the relevant sentencing factors, including several mitigating factors such as Appellant's "difficult childhood, severe mental health history, and lack of a prior record for violent offenses." Appellant's Brief, at 22.

In reviewing such claims, we are mindful that:

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue[, w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and

(4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Manivannan***, 186 A.3d 472, 489 (Pa.Super. 2018) (quotation marks, some citations, and emphasis omitted).

As noted above, Appellant filed a timely post-sentence motion and notice of appeal. We observe that Appellant failed to include a Rule 2119 statement in his appellate brief, but note that the Commonwealth did not object to this deficiency. In similar circumstances, this Court has held that "[s]ince the requirement of such a statement is procedural and not jurisdictional, 'the Commonwealth's failure to object to or otherwise assert the defect in the form of Appellant's brief has resulted in a waiver of the defect.'" ***Commonwealth v. Patterson***, 180 A.3d 1217, 1232 (Pa.Super. 2018) (quoting ***Commonwealth v. Titus***, 816 A.2d 251, 255 (Pa.Super. 2003) (citations omitted)).

We proceed to determine whether Appellant raised a substantial question as to the appropriateness of the sentence under the Sentencing Code. In doing so, we note that our Court must evaluate on a case-to-case basis on whether a sentencing claim raises a substantial question for review. ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa.Super. 2010). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Id***. (citations

omitted). This Court has held that "an allegation that the sentencing court focused exclusively on the seriousness of the crime raises a substantial question for review on appeal." *Commonwealth v. Lewis*, 45 A.3d 405, 411 (Pa.Super. 2012) (*en banc*). We proceed to review the merits of Appellant's claim.

> Our standard of review of a sentencing challenge is well settled:
>
> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Reid*, 323 A.3d 26, 30–31 (Pa.Super. 2024) (quoting *Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa.Super. 2015) (citation omitted)).

As noted above, Appellant argues that the trial court failed to consider all the relevant sentencing factors and instead focused exclusively on the severity of the offense. When imposing a sentence, the trial court must take into account the protection of the public, the gravity of the offense, the rehabilitative needs of the defendant, and the provisions of the Sentencing Guidelines. 42 Pa.C.S.A. § 9721(b).

Our courts have recognized that where the trial court had the benefit of reviewing a pre-sentence report, we must

> presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed

those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*Reid*, 323 A.3d at 31 (citation omitted).

In reviewing the sentencing transcript in this case, we observe that the trial court stated on the record that it had considered Appellant's statement at trial, his family support, Appellant's mental health evaluation, the mitigating evidence described by the defense, along with all of the information in the pre-sentence investigation report.

The trial court thoroughly set forth its reasons on the record for imposing its sentence and discussed each of the sentencing factors set forth in Section 9721. After acknowledging that Appellant committed extremely serious and violent crimes in this case that had a terrible impact on the victim, the trial court expressed its concern that "there is a substantial need to protect the public" given Appellant exhibited a "troubling pattern" in his criminal history of being arrested for increasingly serious crimes after turning eighteen. Notes of Testimony (N.T.), 5/23/23, at 39-40. The trial court found Appellant was a danger to society given that Appellant's previous terms of probation and

parole for previous crimes had not deterred him from engaging in criminal conduct. N.T. at 39. The trial court determined that Appellant presented a higher risk of recidivism than similarly situated offenders based on his failure to accept responsibility for the crimes or show any remorse. N.T. at 43. The trial court also indicated that it considered Appellant's rehabilitative needs and specifically imposed conditions of probation that included drug and alcohol treatment and mental health treatment.

Our review of the record shows that the trial court was clearly aware of the required sentencing considerations and carefully fashioned Appellant's sentence based on Appellant's individualized circumstances. There is no merit to Appellant's claim that the trial court relied solely on the severity of the offense to impose the sentence in this case. Therefore, we conclude that the trial court did not abuse its discretion in imposing Appellant's sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/19/2024

- 13 -